**STATE of Missouri, Plaintiff-Respondent,**

v.

**Douglas LOTTIE, Defendant-Appellant.**

**No. WD33374.**

Missouri Court of Appeals, Western District.

March 15, 1983.

James W. Fletcher, Public Defender, Kansas City, Anne Hall, Asst. Public Defender, for defendant-appellant.

John Ashcroft, Atty. Gen., John Jacobs, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before SHANGLER, P.J., and PRITCHARD and DIXON, JJ.

DIXON, Judge.

Douglas Lottie, jury convicted and sentenced to fifteen years for murder in the second degree, appeals. Defendant claims error in overruling a motion to suppress and insufficiency of the circumstantial evidence to support the verdict.

Shortly after midnight on March 14, 1981, a police officer was in his patrol car driving westbound at 85th Street and Wornall Street. He saw two police cars operating with lights and sirens heading south on Wornall Street. He immediately began to follow them and heard on his police radio that there had been a shooting at 81st or 82nd and Flora Streets. When he arrived at 84th and Flora, he stopped his car and turned the headlights off. After approximately two minutes, the officer saw a black man running from the side of a house. The man began walking when he got beyond the house at Flora Street and proceeded to walk south along a vacant, weeded lot. As he walked the man threw his arms out. The officer called the man over to the police car, got out of the car, and asked him for identification and an explanation of where he was going. The man was identified as Douglas Lottie, the defendant. Defendant showed the officer a Missouri driver's license, but according to the officer gave answers that "did not fit" in response to the officer's questions concerning his address and what he had been doing. The officer, aware of the shooting and concerned for his own safety, frisked defendant and found a clip to a .22 caliber pistol in defendant's pocket. The police officer heard a call over his car radio that a prowler had been reported in that neighborhood. After hearing the prowler call and after a report to the dispatcher, the officer arrested the defendant.

The victim was found in her residence at 82nd and Flora. Her death was due to a gunshot wound. The investigation of the area found that the storm door to the house was closed, but unlocked, and that there were two bullet holes through the window of the house. An empty .22 caliber shell casing was found outside the house below the window containing the bullet holes. A search by officers at the scene of defendant's arrest located a .22 caliber pistol in a weeded area of the vacant lot close to the point where defendant threw up his arms. This gun was located approximately 24 feet west of the curb on Flora Street. The search was initiated by the arresting officer at the point where defendant made the flailing motion with his arms. The weapon had a spent casing stuck in the slide mechanism, and no fingerprints were found on the gun. The shell casing found under the victim's window and a bullet found in the victim were fired from the gun recovered from the vacant lot. The clip found in defendant's pocket had been inserted into and taken out of the gun several times.

Defendant was questioned twice by police during the morning of March 14, 1981. Defendant continually denied shooting the victim. A police officer said that defendant

told him during the second interrogation that defendant had met a man named Fred during the evening of March 13, 1981. Fred was looking for a place to rob, and they bought a gun with two clips, one of which was given to defendant. Defendant told Fred he knew "a lady who has got some money." Defendant said that the two men went to the victim's house, where defendant remained in front of the house while Fred went around to the side. When defendant heard gun shots, he left the area immediately and was arrested.

■ The defendant argues first that the "clip" should have been suppressed because the officer did not have knowledge of any facts sufficient to make a "frisk."

The officer knew a shooting had occurred in the immediate vicinity. It was near midnight. The defendant was observed running from alongside a house and gave answers that "did not fit" to routine questions. This certainly gave the necessary basis for the finding that a reasonably prudent man would fear that his safety was in danger. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Singleton*, 560 S.W.2d 379 (Mo.App.1977). The officer was justified in the stop and frisk of the defendant.

For his second point, the defendant claims the evidence is insufficient to support the conviction. The argument is that the jury was required to resort to "inference stacking" to find the defendant guilty. The state does not attack the rule against inference stacking in circumstantial evidence cases, saying that defendant has correctly cited *State v. Gonzales*, 533 S.W.2d 268, 272 (Mo.App.1976). The state argues only that there is no "inference stacking" under the facts of this case.

The parties do not discuss the viability of the so-called rule against "inference stacking." Substantial criticism has been leveled at the use of the term. *See* 2 F. Harper & F. James, *The Law of Torts* § 19.4 (1956); Annot., 5 A.L.R.3d 100 (1966); 1 J. Wigmore, *Evidence* § 41. Since the parties have not briefed or argued the issue, the case will be decided in the posture presented. Even if it be assumed that such a rule as described exists, the proof in this case raises no issue of such attenuated logic.

The defendant's argument focuses on four factual areas in which defendant contends "inference stacking" was required.

First, defendant argues that the jury was required to infer from defendant's running towards Flora Street that he was running from the scene of the crime and further infer that he had some connection with the crime. That ignores the *direct* evidence that the defendant admitted being at the scene as well as the parallel inferences arising from possession of the clip and the presence of the murder weapon near the scene where defendant was arrested.

The defendant's second claim is that the jury had to infer from the fact that he was in the vicinity of the victim's house that he was near the house and further that he shot the victim. This is sufficiently answered by the same facts noted above.

The defendant also asserts that from the evidence that defendant threw his hands in the air it was necessary to infer that he had an object in his hands and further to infer that the object was the murder weapon. That argument also ignores other facts and circumstances. The weapon was some distance from the crime. No one else was apprehended despite the presence of several officers—at least six and possibly eight—as well as a police helicopter overhead. The weapon was found at the scene of the arrest at a place where defendant could have thrown it and was found within a very short time by the officers searching the area indicated by the arresting officer as the place where defendant made the flailing motion with his arms. The place where it was found was within the surveillance of the officer during any period of time when there was a possibility of someone else depositing the weapon.

■ The defendant also contends that the fact that the clip was in his possession

required the jury to infer the clip was used by defendant in the murder weapon and further infer that he killed the victim. This is again an attempt to isolate one fact and require it to support conviction to the exclusion of the entire chain of circumstances which create inferences inescapably connecting the defendant with the crime. Inferences such as those present in this case, which are parallel inferences all consistent with guilt and totally inconsistent with any reasonable theory of innocence, are sufficient to support the conviction. *State v. Alexander,* 581 S.W.2d 389 (Mo.App.1979).

The judgment is affirmed.

All concur.