STATE of Missouri, ex rel. K.R., minor, by next friend Mary MAY and Jane Radetic, Plaintiffs–Respondents,

v.

Michael BRASHEAR, Defendant–Appellant.

No. 60603.

Missouri Court of Appeals, Eastern District, Southern Division.

Oct. 20, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 19, 1992.

Application to Transfer Denied Dec. 18, 1992.

David J. Roth, II, Lowes & Drusch, Cape Girardeau, for defendant-appellant.

Kathleen A. Wolz, Sp. Asst. Pros. Atty., Child Support Div., Jackson, for plaintiffs-respondents.

KAROHL, Chief Judge.

This appeal stems from an action to establish paternity under the Uniform Parentage Act (UPA), §§ 210.817 through 210.-852 RSMo Cum.Supp.1990. A jury found Michael Brashear to be the father of K.R. He now alleges trial court error in the admission of blood test results, expert opinion testimony, the mother's testimony concerning her financial support of K.R., and submission of a verdict director that failed to require findings on disputed facts as a prerequisite to a finding of paternity. We affirm.

K.R. was born on May 9, 1989. Her mother and putative father testified they engaged in sexual relations from July 9, 1988 through late August or early September, 1988. The mother denied relations with anyone else during that time.

Dr. White, an associate director of paternity evaluation for Roche Biochemical Laboratories, testified that the parties' blood tests revealed a 99.63% probability of paternity. Other evidence was adduced concerning the conduct of putative father's family members toward the child from which inferences of paternity could be drawn. A child support hearing and judgment followed, the findings of which are not at issue in this appeal.

Putative father states his first point as follows:

THE TRIAL COURT ERRED IN ADMITTING EXHIBIT 5, WHICH PURPORTED TO BE A REPORT OF BLOOD TESTING BECAUSE THE DOCUMENT CONTAINED HEARSAY STATEMENTS NOT WITHIN A HEARSAY EXCEPTION AND BECAUSE THE EXHIBIT WAS NOT RELEVANT IN THAT NO PROPER SHOWING WAS MADE THAT THE REPORT WAS A BUSINESS RECORD, NO FOUNDATION WAS LAID TO SHOW THE CHAIN OF CUSTODY OF THE TEST RESULTS ALLEGED AND THE EXHIBIT CONTAINED HEARSAY STATEMENTS WHICH WOULD NOT BE CURED BY THE BUSINESS RECORD EXCEPTION, EVEN IF SUCH EXCEPTION DID APPLY.

The exclusive vehicle for paternity adjudication in Missouri is the UPA. *Poole Truck Lines, Inc. v. Coates,* 833 S.W.2d 876, 877 (Mo.App.1992). The UPA details the procedure for requesting, obtaining, and admitting blood test results into evidence. Section 210.834, RSMo Cum. Supp.1990. *See e.g. State ex rel. Newton v. Conklin,* 767 S.W.2d 112, 117 (Mo.App. 1989). In abbreviated terms, the statute proclaims: the court shall require the parties to submit to blood tests upon a party's request; refusal to submit to blood tests shall constitute civil contempt; the court shall determine the qualification of experts; and the verified report containing results shall be admitted into evidence unless a motion challenging the testing procedures or results has been filed and served at least 20 days before the trial and such motion is sustained. The language is unambiguous in not only allowing, but mandating admission of blood test results in paternity actions and goes as far as to deem blood testing as conclusive evidence of nonpaternity if the results so indicate.

Both parties refer this court to Missouri's business record exception to the hearsay rule, § 490.680, RSMo 1986. Not surprisingly they come to different conclusions as to its application. A report con-

taining blood test results is admissible hearsay under § 210.834. Hence, we need not examine admissibility of the blood test report under this general statute when the more specific statute, § 210.834, controls. Of course, extraneous information could be present that would constitute hearsay within hearsay. At trial there was no issue of hearsay within hearsay. For that reason there was no trial court error in allowing the report in evidence. Here, admissibility of the blood test results depends only on compliance with § 210.834.

■ There is a second reason there was no error in admitting the report. A claim of error in the admission of blood test results is foreclosed by § 210.834.5 if a motion challenging testing procedures or results is not timely filed and sustained. *State ex rel. Anderson v. Sutton,* 807 S.W.2d 152, 155 (Mo.App.1991). Technically then, the only correct procedure for attacking admission of test results on appeal is to claim error in the trial court's denial of such motion. In the present case, the putative father set forth several grounds assailing the blood testing procedures in his answer to the mother's motion for blood examination, none of which are the subject of this appeal. He renewed the points raised in his answer on the day of trial and filed a motion in limine to exclude the blood test report and expert testimony of Dr. White as impermissible hearsay. None of his actions amounted to a motion challenging testing procedures or the results at least 20 days before trial. Therefore, the results were correctly admitted unless verified documentation of the chain of custody of the blood samples was lacking, § 210.-834.5.

■ The chain of custody requirement in civil cases is no more elaborate than in criminal cases. *Storm v. Ford Motor Co.,* 526 S.W.2d 875, 878 (Mo.App.1975). The item need not be watched or continually possessed. *State v. Rogers,* 523 S.W.2d 344, 348 (Mo.App. 1975). A hand-to-hand showing is not required. *State v. Starr,* 676 S.W.2d 311, 312 (Mo.App.1984). The trial court has discretion to decide chain of custody issues. *State v. Turnbough,* 729 S.W.2d 37, 39 (Mo.App.1987).

■ The record contains ample support for the trial court's apparent conclusion that verified documentation of the chain of custody was sufficiently established. Dr. White gave detailed testimony concerning Roche Biochemical Laboratories' mode of gathering the blood samples, testing, analysis and record keeping procedures in general and as contained in the parties' report. Dr. White testified that the phlebotomist involved in this case had signed indicating she labelled and sealed the blood samples, mailed them to the laboratory, and the receiving technician had signed the report indicating the box containing the blood samples arrived sealed and without signs of tampering. Dr. White testified further that the laboratory adhered to the most current guidelines for paternity evaluation published by the American Association of Blood Banks.

At each juncture, the trial court followed the UPA's mandate for the admission of blood test results. Point denied.

Putative father's second point is:

THE TRIAL COURT ERRED IN ADMITTING THE TESTIMONY OF DR. WHITE BECAUSE OPINION EVIDENCE MUST BE BASED ON REASONABLY RELIABLE EVIDENCE IN THAT DR. WHITE ADMITTED THAT SHE HAD NO PERSONAL KNOWLEDGE OF THE TEST ITSELF, AND THERE WAS NO OTHER SHOWING THAT THE INFORMATION WAS REASONABLY RELIABLE UPON WHICH HER OPINION COULD PROPERLY BE BASED.

■ The objection to Dr. White's testimony was founded primarily on putative father's continuing supposition that the blood test results were inadmissible. He does not question her experience and qualifications as a scientist to interpret genetic marker testing results and explain the process to the jury. An expert may base an opinion upon matters within personal knowledge or upon competent evidence, *Div. of Family Services v. Guffey,* 795 S.W.2d 546, 551 (Mo.App.1990), that is, evidence generally admissible due to its relevance and materiality to the issue being

litigated. The blood test results constituted competent evidence.

■ Missouri's statute governing expert witnesses, § 490.065, RSMo Cum. Supp.1990, does not limit the body of potential experts to those who perform clinical experiments. "The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to [her] at or before the hearing." Section 490.065.3. There is no requirement Dr. White have personal knowledge of the parties' test in order to formulate an opinion based upon the results. Furthermore, the record supports the conclusion that the testing procedures and results utilized by Dr. White were "of a type reasonably relied upon by experts in the field." *Id.* Roche Biochemical Laboratories performs some 30,000 paternity tests each year and adheres to industry guidelines. Point denied.

Putative father next contends:

THE TRIAL COURT ERRED IN ADMITTING THE TESTIMONY OF PETITIONER THAT SHE HAD BEEN PAYING THE CHILD'S SUPPORT BECAUSE THE SOLE QUESTION BEFORE THE JURY WAS PATERNITY IN THAT SUCH TESTIMONY WAS WHOLLY IRRELEVANT AND ONLY SERVED TO INFLAME AND PREJUDICE THE JURY AND CONSTITUTED AN IMPERMISSIBLE PLEA OF POVERTY.

The questioned portion of mother's testimony extracted from her attorney is as follows:

Q. [Defense counsel] has questioned you about putting the hurt on Michael. ... Prior—Since the time you've had this child, who's paid for the care of this child?

A. I have.

Q. Financially, up to this time, have you been—have you expended money on behalf of the child?

A. Oh, yes.

Q. Has anyone else spent any money on behalf of the child?

A. Besides my family that have bought [sic] gifts. As far as giving me any money, no. And his family buying gifts.

[DEFENSE COUNSEL]: I object to that. Move that be stricken. And it, moreover, isn't germane to the issues in this particular law—part of the lawsuit, Judge....

THE COURT: The objection is overruled.

■ Failure to object to an argument or statement at the time it was made to the jury results in waiver of any right to complain about it on appeal. *Eagleburger v. Emerson Elec. Co.*, 794 S.W.2d 210, 228 (Mo.App.1990). Putative father's objection comes after mother's testimony concerning her financial support of her child, and it is initially unclear which part of her testimony he finds objectionable. His claim of error is not preserved for review because he failed to make a timely objection at trial. Point denied.

Finally, putative father claims:

THE TRIAL COURT ERRED IN TENDERING INSTRUCTION NO. 6 TO THE JURY BECAUSE SAID INSTRUCTION CONSTITUTED A ROVING COMMISSION AND SAID VERDICT DIRECTING INSTRUCTION OMITTED ISSUABLE FACTS IN CONTROVERSY IN THAT THERE WERE NO ULTIMATE FACTS WITHIN THE VERDICT DIRECTOR AND SAID INSTRUCTION OMITTED A REQUIREMENT THAT THE JURY MAKE A FINDING OF WHETHER THEY BELIEVE THAT RESPONDENT ENGAGED IN SEXUAL INTERCOURSE WITH PETITIONER AND WHETHER THAT RESULTED IN THE CONCEPTION OF THE CHILD IN QUESTION, UPON WHICH THE JURY SHOULD AND MUST FIND AND UPON WHICH THE JURY SHOULD BASE ITS VERDICT.

The instruction, submitted by mother, reads "Your verdict must be for petitioner, Jane Radetic, if you believe that the respondent, Michael Brashear, is the father of [K.R.]." Putative father insists the instruction is prejudicial and erroneous in that it omitted a required finding of the underlying issues in controversy. Specifically, he argues there was nothing in the instruction as given that required the jury to find mother and putative father engaged in sexual relations and that as a result of

such contact the child in question was conceived. Putative father also suggests the instruction left the jury free to find paternity based upon an irrational reason or no reason at all.

 There is no approved paternity instruction in Missouri. The instruction must be brief, simple, impartial, non-argumentative, readily understandable by a jury composed of ordinary people, and it must follow the substantive law. *Venable v. S.O.R., Inc.*, 713 S.W.2d 37, 40 (Mo.App. 1986); Rule 70.02(e).

"We will not reverse for instructional error unless prejudice is demonstrated." *Crabb v. Mid–American Dairymen, Inc.*, 735 S.W.2d 714, 718 (Mo. banc 1987). Furthermore, "one who considers that a proposed instruction may confuse the jury or affect his presentation adversely has the opportunity to suggest modification or to submit alternatives at the instruction conference. Although objection at that time is not necessary to preserve error (Rule 70.-03), its absence may be considered in assessing prejudicial effect." *Id.* Putative father did not object at trial to the giving of instruction number 6 on the grounds now argued. His motion for a new trial professed the instruction was hopelessly confusing and misleading, did not set forth ultimate factual elements, and gave the jury a roving commission to speculate without any guidance to decide the paternity issue.

■ By putative father's own testimony, he had sexual relations with mother from July 9, 1988 through August 26, 1988. The child was born May 9, 1989, well within the 280 day gestation period recognized by the courts, *Robinett v. Robinett*, 770 S.W.2d 299, 304 (Mo.App.1989), and, more importantly, well within the normal human gestation period recognized by ordinary jurors. There is no reason for this court to speculate the jurors ignored matters of common knowledge and returned a verdict of paternity for irrational reasons. We find the instruction met the criteria of Rule 70.02(e) and find no prejudice to putative father. Point denied.

We find no trial court error in the admission of any evidence, nor prejudicial error in the tendered jury instructions.

We affirm.

CRIST and AHRENS, JJ., concur.