**STATE of Missouri, Plaintiff–Respondent,**

v.

**Jimmy Dean McMULLIN, Defendant–Appellant.**

No. 25803.

Missouri Court of Appeals, Southern District, Division Two.

June 22, 2004.

Margaret M. Johnston, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Office of Atty. Gen., Jefferson City, for Respondent.

KENNETH W. SHRUM, Judge.

A jury convicted Jimmy Dean McMullin ("Defendant") on two counts of violating a full order of protection (§ 455.085).[1] The order prohibited Defendant from having any contact with his estranged wife. Defendant, who was a prior offender under section 455.085.8, was sentenced to consecutive four-year terms of imprisonment on each count.[2] On appeal, Defendant first urges reversal of both judgments because of an alleged discovery violation. In another point relied on, he charges there was not sufficient evidence to support a verdict of guilty for the crime charged in Count I of the information. This latter claim is meritorious; consequently, we reverse the judgment of conviction and sentence for the crime charged in Count I. We reject, however, the discovery violation claim and affirm the judgment of conviction and sentence for the crime charged in Count II.

## FACTS

Defendant married Jessica McMullin ("Victim") on August 12, 1996. After an apparent tumultuous marriage, Victim filed for and was granted a full order of

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

2. The Adult Abuse Act is found in sections 455.005 to 455.085. It was enacted in 1980 as a result of an increased awareness nationally of the prevalence of domestic violence and of the need to protect victims of that violence. *State ex rel. Williams v. Marsh*, 626 S.W.2d 223, 226 (Mo.banc 1982). Sections 455.035 to 455.050 allow an abuse victim to petition the circuit court for an ex parte or full order of protection and allow the court to enter such orders to enjoin or restrain the abuser from certain acts such as communicating with the victim, harassing or abusing the victim, or entering the victim's property. When an abuser knowingly violates such orders, he or she can be prosecuted by the state under section 455.085. Section 455.085.8 enhances the penalty for violating a full order of protection, from a class A misdemeanor to a class D felony, if the abuser has pleaded guilty or been found guilty of violating an ex parte or full order of protection within the past five years.

protection that was effective until July 27, 2001. This order directed that Defendant "shall not stalk, abuse, threaten to abuse, molest or disturb the peace" of Victim and that he "shall not enter upon the premises of the dwelling" of Victim.

On June 1, 2001, Victim filed for and was granted an "ex parte" extension of the July 27 order until a hearing could be held on a new full order of protection. The hearing date was set for August 6, 2001, and Defendant was served while he was incarcerated in the Jasper County jail. The record does not show that Defendant attended this hearing. On August 6, 2001, the Newton County court entered a new full order of protection effective for one year. A new restriction from the previous order was added to the August 6 order: "[Defendant] shall not communicate with [Victim] in any manner through any medium." The sheriff's return was not filled out on the new full order, however.

In February or March 2002, Defendant began writing letters to Victim. Count I of the amended information alleged that Defendant violated the August 6 full order of protection by writing Victim letters which were received by her sometime around March 12, 2002. As part of his defense, Defendant relied on the fact that the sheriff's return was not filled out; consequently, it could not be determined from the return whether Defendant knew of the terms of the full order of protection. Based on Defendant's claim that there was no other evidence to show he knew about the order, he insists he could not be convicted of the crime charged.

To counter Defendant's lack of knowledge defense, the State relied on Exhibit 10, a letter written by Defendant sometime in April 2002. Therein, Defendant wrote the following: "The reason why I'm still writing is cause the protection order isn't enforceable till I'm served with the exten-

sion, so there you have it, they don't have another case till I'm served." During closing arguments, the prosecutor discussed that foregoing passage:

"It may be correct he wasn't served, but he's misstating the law, as the instructions will tell you. Maybe some states you actually have to be served. In Missouri, you can be served or you can be aware of it. I'm submitting to you that paragraph indicates to you he's very clearly aware of what he's not supposed to be doing."

Count II of the amended information alleged that Defendant violated the August 6 full order of protection by sending Victim a threatening letter received by her on July 9, 2002. Again, the April letter (Exhibit 10) was used by the State to show Defendant knowingly violated the terms of the order via communicating with Victim.

The jury found Defendant guilty on both counts of the amended information. After Defendant was sentenced, he perfected this appeal.

### Point I: Alleged Discovery Violation

■ Defendant's first point maintains the trial court abused its discretion when it admitted into evidence Exhibit 10 (Defendant's April 10 letter to Victim). He argues "that the second page of the exhibit was not disclosed to [Defendant] prior to trial in violation of Rule 25.03." Defendant claims he was prejudiced by its admission because the second page "contained the only proof of [his] knowledge of the terms and existence of the order of protection."

■ "The discovery rules seek to foster informed pleas, expedited trials, a minimum of surprise, and the opportunity for effective cross-examination." *State v. Wells*, 639 S.W.2d 563, 566 (Mo.banc 1982). Upon a defendant's written request, the state is required to disclose any written or

recorded statements made by the defendant. Rule 25.03(A)(2).[3] "The rules of criminal discovery are not mere etiquette nor is compliance to be at the discretion of the parties." *State v. Farr*, 69 S.W.3d 517, 523 (Mo.App.2001). "If the State fails to comply with Rule 25.03, the trial court is permitted to levy various sanctions against the State...." *State v. Rippee*, 118 S.W.3d 682, 684 (Mo.App.2003).

■■■■ If a violation occurs, the court may order the state to make disclosure of the information not previously disclosed, exclude the evidence, grant a continuance, or enter such other orders as it deems just under the circumstances. Rule 25.16.[4] The sanctions authorized by Rule 25.16 are not mandatory, however. *Rippee*, 118 S.W.3d at 684[2]. The remedy for a discovery violation lies within the sound discretion of the trial court. *State v. Kilgore*, 771 S.W.2d 57, 66[19] (Mo.banc 1989). "A trial court's denial of a requested sanction is an abuse of discretion only where the admission of the evidence results in fundamental unfairness to the defendant." *Id.* at 66. "The notion of fundamental unfairness in turn is to be measured by whether the evidence or the discovery thereof would have affected the result of the trial." *State v. Royal*, 610 S.W.2d 946, 951[13] (Mo.banc 1981).

Here, Defendant claims that he was unfairly surprised by the nondisclosure of Exhibit 10, specifically the second page thereof. This argument is refuted by the record.

Approximately one month before trial, the State informed defense counsel, at a pre-trial hearing, that it intended to use the letters Defendant sent to demonstrate his knowledge of the full order of protection and that he knew he was not to communicate with Victim. When defense counsel deposed Victim one week before trial, he was informed that there were pages missing from two letters. Defense counsel explained as follows: "I didn't ask her what they said. And I don't believe I asked her where they were. She just indicated that there was, I think, two letters missing pages. I didn't ask her what was it they said." Moreover, all of Defendant's letters contained his signature. The first page of Exhibit 10 did not. It would be reasonable to infer that Exhibit 10 was missing a page upon even a cursory reading of the letter.

At trial, when the State attempted to introduce Exhibit 10, defense counsel timely objected. Before ruling, the court offered defense counsel a recess to review the letter, but stated it did not believe the discovery "would change anything as far as trial strategy or anything like that." Defense counsel told the court, "I'd rather just take a fairly short recess now" in order to examine the document. Upon returning, defense counsel continued to argue that Exhibit 10 should be excluded. The court overruled the objection and stated the following:

> "The State didn't do it intentionally or with the intent to not disclose, and I think based on the testimony of the deposition, that if there was something missing, honestly, I think that that would have been the time to delve into that and try and find out what happened to it or where it is, and ask what was in it and that kind of thing."

Notably, defense counsel only asked for exclusion of the evidence. He was granted a recess to examine the document, but he never asked for a continuance of the case, nor did he request a mistrial.

---

**3.** All rule references are to Supreme Court Rules (2003), unless stated differently.

**4.** Effective July 1, 2004, Rule 25.16 has been renumbered Rule 25.18.

We find no abuse of discretion when the trial court admitted Exhibit 10 into evidence. This follows for several reasons. First, defense counsel knew before trial that certain letters were missing pages, *and* he knew that the State intended to use the letters to show Defendant's knowledge of the full order. Counsel's lack of knowledge of the *exact* contents of Exhibit 10 resulted from his own doing. This is not the type of "unfair surprise" the discovery rules seek to prevent. *See State v. Sykes*, 628 S.W.2d 653, 656–57 (Mo.banc 1982) (holding, "[w]here the defendant has prior knowledge of the state's possession of evidence, as did appellant in this case so as not to have been surprised by its introduction there is no abuse of discretion").

Second, no fundamental unfairness resulted because the discovery of the second page prior to trial would not have affected the proceedings in any manner. One defense asserted at trial was that Defendant was not the author of the letters. Defense counsel put before the jury the fact that no one actually saw Defendant write the letters. Further, counsel sought to paint the Victim as a woman scorned who, out for revenge, lied about the letters she allegedly received from Defendant. In closing argument, defense counsel stated:

> "Earlier I asked you to keep in mind that the State's main witness is [Defendant's] ex-wife. They're divorced. She has a motive in testifying here today. If you believe her testimony, the only thing it tells us is that there were some letters that were written, and according to her, they were written by him. There's no other evidence to show when the letters were written; there's no other evidence to show when the letters were received; there's no other evidence to show who wrote the letters."

Regardless of the disclosure of the second page of Exhibit 10, this defense would not have changed.

Finally, we note that the trial was recessed so defense counsel could examine the document and develop a reasonable trial strategy in order to deal with its admission. In closing argument, defense counsel told the jury that the statement in Exhibit 10 was ambiguous and revealed nothing about Defendant's knowledge of the actual contents of the full order of protection. Counsel still argued that Defendant was never served with the order and did not know he could not communicate with Victim. Counsel argued the statement "does not give explicit language saying, I know there's an order out there and I'm writing you to violate it." Under the circumstances of this case, it was reasonable for counsel to devise that strategy to counteract the effects of the admission of Exhibit 10.

The purpose of the discovery rules were met here because Defendant was not surprised and his defense was not affected. *Kilgore*, 771 S.W.2d at 66–67; *Wells*, 639 S.W.2d at 566. Consequently, there was no fundamental unfairness present in this trial. *Kilgore*, 771 S.W.2d at 66–67; *Royal*, 610 S.W.2d at 951. The trial court did not abuse its discretion when it admitted Exhibit 10 after recessing the trial so that defense counsel could examine the document. *Rippee*, 118 S.W.3d at 684; Rule 25.16. Point denied.

### Point II: Sufficiency of the Evidence on Count I

In his second point on appeal, Defendant alleges the evidence was insufficient to convict him on the first count of the amended information. In Count I, Defendant was charged with knowingly violating the full order of protection when he sent letters to Victim, which she received near March 12, 2002. On appeal, he ar-

gues that the only evidence showing his knowledge of the order of protection is contained in Exhibit 10. Defendant correctly points out that Victim testified that Exhibit 10 was received by her sometime in April 2002. Based on the fact that Count I charged Defendant violated the protection order by contacting Victim in March 2002, Defendant argues that what he said in the April letter was not proof he knew about the order in March. He further claims the State presented nothing else to show he knew in March 2002 about the order; consequently, he insists the State failed to make a submissible case for the crime charged in Count I. This court agrees.

In *State v. Gentry*, 936 S.W.2d 790 (Mo.banc 1996), the Missouri Supreme Court stated:

> "For purposes of due process as it applies to the crime defined in section 455.085.8, notice is sufficient only if it arrives before the fact, when knowledge of the acts the statute forbids can, if heeded, permit a person to conform her conduct to the demands of the law."

*Id.* at 793[3]. Although *Gentry* is factually distinguishable from this case, the due process discussion is apropos here. The State was required to prove Defendant possessed knowledge of the full order of protection (and its prohibitions) in March 2002, not April of that same year. In this, the State failed.

In so holding, we are mindful that, in reviewing claims attacking the sufficiency of the evidence, we must accept as true all evidence and inferences favorable to the verdict, while disregarding all evidence and inferences to the contrary. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). We also recognize, however, that this court cannot supply missing evidence or give the State the benefit of unreasonable, speculative, or forced inferences. *State v. Whalen*, 49 S.W.3d 181, 184[3] (Mo.banc 2001). Stated differently, a verdict cannot rest upon the piling of an inference upon an inference when there are no *facts* supporting the first inference.[5] *State v. Ring*, 346 Mo. 290, 141 S.W.2d 57, 64–65[16] (1940); *State v. Ashcraft*, 342 Mo. 608, 116 S.W.2d 128, 132 (1938); 31A C.J.S. *Evidence* § 133 at 274–75 (1996).

The State would apparently have this court do exactly that, i.e., speculate that Defendant had knowledge of the full order of protection in March 2002 and its prohibitions. First, the State argues there was evidence that "oftentimes" the circuit clerk would send, via certified mail, a copy of the order to the affected party. Although testimony or other evidence from a court clerk describing the actual mailing, or the clerk's office's custom or practice of mailing notices might be sufficient in some circumstances, *Eastin v. Franklin*, 806 S.W.2d 57, 61 (Mo.App.1991), evidence about what the clerk "oftentimes" does is simply not sufficient. This is especially so

5. The usage of terms such as "piling inference upon inference" (*Ring*, 141 S.W.2d at 65) or "inference stacking" (*State v. Lottie*, 648 S.W.2d 908, 910 (Mo.App.1983)) can be found throughout Missouri caselaw in reference to a rule prohibiting such activity. Not only has this "rule" been sharply criticized, its very existence has been doubted. *See, e.g., Braun v. Roux Distrib. Co.*, 312 S.W.2d 758, 764 (Mo.1958); *Wills v. Berberich's Delivery Co.*, 345 Mo. 616, 134 S.W.2d 125, 129 (1939); and *Ashcraft*, 116 S.W.2d at 128. The inference stacking rule "is essentially based on the fact that an inference cannot be based on insufficient evidence." 31A C.J.S. § 133 at 274. "[T]he underlying question is whether the conclusion hypothesized can fairly be drawn from the proven facts by reasonably intelligent minds." *Wills*, 134 S.W.2d at 129. "The strength of the relation between the factual premise and the conclusion is all important, even though one or more 'inferences' intervene." *Id.*

when, as here, the "oftentimes" testimony came from a "victim advocate" employee of the sheriff's office, not a court clerk employee.

Second, the State argues that we can presume the clerk sent the notice to Defendant because he or she is mandated to do so via statutory requirements and the order itself. Generally, we agree that appellate courts can presume circuit clerks, as extensions of the circuit court, know the law and follow the law in discharge of their normal duties. *See, e.g., State ex rel. Davidson v. Caldwell,* 310 Mo. 397, 276 S.W. 631, 633–34 (1925); *Cannon v. Nikles,* 235 Mo.App. 1094, 151 S.W.2d 472, 475 (1941); and *State ex rel. Robbins v. Gideon,* 228 Mo.App. 1023, 77 S.W.2d 647, 648 (1934). As such, we could presume and infer that the circuit clerk sent Defendant a copy of the full order.

The State fails to realize, however, what happens to that presumption when it is weighed against the presumption of Defendant's innocence. Given the substantial constitutional weight of one's liberty interest, the presumption of innocence must prevail. *See Yarnell v. Kansas City, Ft. S. & M.R. Co.,* 113 Mo. 570, 21 S.W. 1, 3–4 (1893) (holding when two presumptions conflict "the result is that one presumption rebuts and neutralizes the other, like the conjunction of an acid and an alkali"); 31A C.J.S. § 136 at 281–82 (the stronger of two presumptions will prevail).

Even if we were to presume the clerk mailed the notice, then we would have to further presume that Defendant received it. 31A C.J.S. § 152 (*proof* that a letter is properly addressed, stamped, and mailed raises a *presumption* that it was received). An appellate court cannot infer a fact (receipt of the order) when that inference is based upon another inference (presumption the clerk properly mailed the order) that is not based upon a *fact. State v.*

*Bailey,* 645 S.W.2d 211, 214[8] (Mo.App. 1983).

Finally, we note the State points to specific language, contained in certain letters written by Defendant, that allegedly demonstrate his knowledge of the prohibited conduct in March 2002. We have exhaustively examined the letters and conclude this contention is without merit. We agree with the State that it is highly unlikely that Defendant gained knowledge of the order in April, but somehow did not possess that knowledge in March. The State, however, did not adduce any evidence of this. As aptly stated by our supreme court:

> " 'An *"inference"* is a conclusion drawn by reason from *facts* established by *proof;* "a deduction or conclusion from facts or propositions known to be true."
> … A *supposition* is a *conjecture* based on the *possibility* that a thing could have happened. It is an idea or a notion *founded on the probability that a thing may have occurred, but without proof that it did occur.'* "

*Draper v. Louisville & N.R. Co.,* 348 Mo. 886, 156 S.W.2d 626, 630 (1941) (citation omitted) (emphasis supplied). A criminal conviction cannot be based upon probabilities and speculation. *State v. Boyd,* 91 S.W.3d 727, 734 (Mo.App.2002).

We reverse Defendant's conviction and sentence on Count I of the amended information and order the Defendant discharged as to that count. We affirm Defendant's conviction and sentence on Count II of the amended information.

PREWITT, J., concurs.

BATES, J., concurs.