**STATE of Missouri, Plaintiff–Respondent,**

v.

**Dale Dewayne BOOKWALTER Sr., Defendant–Appellant.**

**No. SD 30013.**

Missouri Court of Appeals, Southern District, Division One.

Nov. 17, 2010.

Matthew Ward, Columbia, MO, for Appellant.

Chris Koster, Attorney General and Jamie Pamela Rasmussen, Assistant Attorney General, Jefferson City, MO, for Respondent.

DON E. BURRELL, Judge.

A jury found Dale Dewayne Bookwalter Sr. ("Defendant") guilty of statutory sodomy in the first degree. *See* section 566.062.[1] Defendant was thereafter sentenced to a fifteen-year term of incarceration. Defendant's sole point on appeal alleges the trial court erred in denying his motion for judgment of acquittal at the close of the evidence because "there was insufficient evidence from which a juror could find beyond a reasonable doubt that [the victim] was less than fourteen years old during the charged time period." [2]

This case painfully demonstrates that the prosecutor's failure to ask and receive an answer to the simplest of questions— "What was your date of birth"—has created a serious question about whether the State sufficiently proved what should have been the easiest element of its case. Although it is a close question, we believe the jury's finding regarding the victim's age was supported by sufficient evidence and affirm Defendant's conviction.

## Facts

We here recite the evidence as viewed in the light most favorable to the jury's verdict and give the State the benefit of all reasonable inferences that may be drawn from that evidence. *State v. Langdon*, 110 S.W.3d 807, 811 (Mo. banc 2003). We disregard any evidence or inference contrary to the verdict. *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). In mid-August 2008, Defendant's son ("Victim") was living with Defendant in a house where several other persons were also living. Defendant and Victim's mother ("Mother") had divorced a few months earlier and shared custody of Victim. At some point, Mother moved out of the house and left Victim with Defendant. Victim remained with Defendant until he left to live with Mother after a storm caused a power loss at Defendant's home.

At some point between mid-August 2008 and when Victim left to live with Mother on September 14 or 15, 2008, an adult, male friend who was living with Defendant woke Victim during the night and told Victim to go to Defendant's room. Once Victim did so, the men told Victim to take his boxer shorts off. Defendant then put his penis in Victim's anus and "moved around." Victim told Defendant to stop, but Defendant did not stop. Defendant eventually told Victim to go back to bed. A few nights later, Victim was again awakened by Defendant's friend and told to go to Defendant's room. On that occasion,

---

1. Unless otherwise indicated, all statutory references are to RSMo, Cum.Supp.2006.

2. The applicable degree of statutory sodomy is determined by the victim's age at the time of the charged conduct. Although the State notes that the charging instrument contained an alleged date of birth for the victim that would have resulted in his being under the age of fourteen at the time of the alleged offense and that the victim's mother testified to the child's age at a pretrial section 491.075 hearing, the charging instrument is not evidence and Mother's 491.075 hearing testimony was not presented to the jury.

after Defendant told Victim to take of his clothes, Defendant's friend "did the same thing [ ]" to Victim. Victim testified that Defendant had a gun this time and told Victim that he would hurt Victim and his family if he told anyone. Victim testified that "this" happened again on six-to-eight other occasions while he was still living with Defendant.

Victim's special education teacher noticed changes in Victim's behavior toward the end of August. Previously, "he was very well-behaved." She noticed that Victim began to have trouble getting along with others, he "cried a lot," had "outbursts" and began to suffer from "very, very bad hygiene."

In his opening statement to the jury, the prosecutor stated that Victim was "a 13–year–old boy" and in his closing argument that Victim "was less than 13 when it happened," and "[a] 12–year–old boy." Although Victim, Mother, Victim's teacher, and Victim's half-brother ("Half–Brother") all testified at trial, none of them were asked when Victim was born or even how old he was. Victim's teacher testified that Victim was a seventh-grader when school started around August 15, 2008. Mother testified that she had two children besides Victim: Half–Brother—who was fifteen years old—and Victim's sister ("Sister")— who was fourteen years old—at the time the case was tried on June 11, 2009. Defendant was the father of Sister but was not the father of Half–Brother.

## Standard of Review

■ In reviewing a challenge to the sufficiency of the evidence, we "must determine whether there is sufficient evidence from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt." *State v. Whalen,* 49 S.W.3d 181, 184 (Mo. banc 2001). The verdict may be supported by all reasonable inferences to be drawn from the evidence, but "[t]he Court may 'not supply missing evidence, or give the [State] the benefit of unreasonable, speculative or forced inferences.'" *Id.* (quoting *Bauby v. Lake,* 995 S.W.2d 10, 13 n. 1 (Mo.App. E.D.1999)). "Reasonable inferences may be drawn from both direct and circumstantial evidence." *State v. Dixon,* 70 S.W.3d 540, 544 (Mo.App. W.D.2002) (citing *State v. Grim,* 854 S.W.2d 403, 412–13 (Mo. banc 1993)).

■ "This court is charged with the responsibility of determining whether all of the evidence, direct and circumstantial, is sufficient to provide any rational juror with proof beyond a reasonable doubt as to each element of the crime." *State v. Smith,* 108 S.W.3d 714, 718 (Mo.App. W.D. 2003). The question is whether all elements of the crime were supported by the facts presented. *Id.* "When reviewing the sufficiency of evidence supporting a criminal conviction, the Court does not act as a "'super juror'" with veto powers,' but gives great deference to the trier of fact." *State v. Chaney,* 967 S.W.2d 47, 52 (Mo. banc 1998) (citations omitted). If a fact is proven by circumstantial evidence, those circumstances are no longer required to be inconsistent with any reasonable theory of innocence. *Grim,* 854 S.W.2d at 406–08.

## Analysis

■ Defendant now challenges for the first time on appeal the evidentiary support for the State's claim that Victim was less than fourteen years old at the time of the charged conduct. Defendant did not raise the issue of Victim's age in either his motion for directed verdict at the close of the evidence or in his subsequent motion for new trial. While the failure to raise an allegation of error with the trial court is usually fatal on appeal, an appellate challenge to the sufficiency of the evidence

supporting a criminal conviction may be made under Rule 29.11(d)(3)[3] even if the claim was not raised in a motion for new trial. Our high court has held that "[i]f the evidence is insufficient to sustain a conviction, plain error affecting substantial rights is involved from which manifest injustice must have resulted." *State v. Withrow*, 8 S.W.3d 75, 77 (Mo. banc 1999).

"A person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old."[4] Section 566.062.1. Under the verdict directing instruction submitted in this case, the jury was informed that to find Defendant guilty of the charge brought against him, it must find beyond a reasonable doubt that the conduct occurred "between the dates of August 20th and September 18, 2008" and "that at that time [Victim] was less than fourteen years old...." The prosecutor's statements about Victim's age in opening and closing were, of course, not evidence. *See State v. Forrest*, 183 S.W.3d 218, 226 (Mo. banc 2006). Although the State notes in its brief that "[Victim]'s age did not appear to be a contested issue at trial[,]" "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *see also Smith*, 108 S.W.3d at 718.

Defendant cites *Dixon*, 70 S.W.3d 540, as a case in which the evidence was held insufficient to prove that the victim was less than fourteen years old when the offenses of first-degree statutory sodomy and first-degree statutory rape were alleged to have been committed. In *Dixon*, as in the instant case, no evidence of the victim's birth date was presented. "Instead, [the victim] testified that on the date of the trial, April 13, 2000, she was fifteen years old." *Id.* at 545. Other evidence demonstrated that the victim must have turned fifteen before June 1, 1999, because she turned fifteen while she was still living with her mother and the defendant and she went to live with her grandmother after the defendant was arrested on June 1, 1999. *Id.* As a result, the Western District found:

> From this information, the reasonable inference is that [the victim's] fifteenth birthday occurred sometime between April 13 and June 1, 1999. Therefore, she must have turned fourteen between April 13 and June 1, 1998. Based on this evidence, a reasonable juror could find that [the victim] was "less than fourteen years of age" only *before April 13, 1998*. The jury, therefore, could not have found that she was less than fourteen "on or between July 1, 1998 and May 14, 1999," the period specified in the instruction as that during which the offenses were committed.

*Id.* (emphasis in original). Because there was no possibility that the victim could have been less than fourteen years old at the time of the alleged conduct, the defendant's convictions for statutory rape and statutory sodomy were reversed, and the case was "remanded for retrial of [the defendant] on the lesser offenses of second degree statutory rape and second degree statutory sodomy."[5] *Id.* at 551.

---

**3.** All rule references are to Missouri Court Rules (2010).

**4.** Deviate sexual intercourse includes "any act involving the genitals of one person and the ... anus of another person ... done for the purpose of arousing or gratifying the sexual desire of any person...." Section 566.010(1).

**5.** The defendant in *Dixon* was also charged with abuse of a child, incest, and endangering the welfare of a child. His convictions on

Here, the only evidence relating to Victim's age was: 1) Victim's physical appearance and manner while testifying at trial; 2) that Victim was just starting the seventh grade at the time the charged offense was committed; and 3) the ages of Victim's siblings on the date of trial.

### Victim's Appearance and Manner at Trial

In regard to Victim's appearance, the State cites *State v. Hahn*, 35 S.W.3d 393 (Mo.App. E.D.2000). The victim did not testify in *Hahn* but the jury was permitted to see her. The Eastern District stated that the jury could properly conclude from that observation that the victim was less than fourteen years of age. However, as the State admits, the parties had stipulated to the victim's age—which was *four* years old. *Id.* at 396. By simple observation, a jury could easily determine that a four-year-old was less than fourteen years old but have a much more difficult time doing so if the child at issue was a seventh-grader.

In the case at bar, the jury was able to do more than simply observe Victim's appearance. It was also able to gauge Victim's age based on his manner while testifying and the amount of sophistication (or lack thereof) he displayed when answering questions put to him by both the prosecutor and defense counsel.

### Victim's Grade in School

The State next points out that "[Victim] was in the first part of seventh grade at the time of the abuse." While Victim would certainly be younger at the start of school than he would be later in the year,

there was no evidence before the jury as to the month of Victim's birth. There was also no evidence presented as to the typical age of a student entering the seventh grade. Whether a student just entering the seventh grade is less than fourteen years old might well depend on the age at which he started school and whether he had ever skipped or repeated any grades.[6]

In reviewing a delinquency case, *In re V.F.S.*, 172 S.W.3d 887 (Mo.App. S.D.2005), we had to determine whether there was sufficient proof that a juvenile offender knew his victim was under 17 years of age. In that context, we found and held,

> Here, the most that can be said about Victim's age is that he was in high school. This fact does not prove that Victim was under the age of seventeen. Moreover, there is absolutely no evidence indicating that [the juvenile offender] knew Victim's age. Due to this failure of proof, the judgment must be reversed.

*Id.* at 889. But here, the jury knew Victim's specific grade, not just that he was "in high school"—a period of schooling that typically spans four years.

### The Ages of Victim's Siblings at Trial

The State next notes that the jury heard testimony that Half–Brother was fifteen years old at the time of trial on June 11, 2009. Assumed as true, this testimony proved that Victim was fifteen years old or younger at the time of trial. The jury also heard that Sister was fourteen at the time of trial, but did not hear whether Sister was older, younger, or the same age as Victim. They also heard no evidence of

those offenses (which did not require proof that the victim was less than 14 years of age at the time of the alleged conduct) were affirmed. *Id.* at 542–43.

6. In this particular case, the fact that Victim had a special education teacher suggests the possibility that he may not have progressed through school at the same pace as a typical student.

the date of birth for either Half–Brother or Sister.

A 280–day gestation period has been recognized as within the common knowledge and understanding of judges and jurors in the context of a civil paternity case. *State ex rel. K.R. by May v. Brashear*, 841 S.W.2d 754, 759 (Mo.App. E.D.1992). In paternity cases, "[c]ourts take judicial notice of the normal 280–day gestational period and the party having the burden of proof must present evidence to support a finding of a shorter or longer gestational period." *State ex rel. Dep't of Soc. Servs., Div. of Child Support Enforcement v. Miller*, 218 S.W.3d 2, 6 n. 4 (Mo.App. S.D. 2007).

Assuming, without determining, that a presumption of a 280–day gestational period could be applied in a criminal case, the question becomes what a reasonable juror could infer about Victim's age at the time of the charged conduct from the ages of Half–Brother and Sister at the time of trial. Those applicable facts were: 1) all three children shared the same mother (but not the same father); 2) Half–Brother was fifteen and Sister was fourteen on the day of trial (June 11, 2009); and 3) Half–Brother was older than Victim. In addition to these facts, we will also assume for the moment that a reasonable juror could also find beyond a reasonable doubt that each of Victim's siblings were in Mother's womb for 280 days. *Cf. K.R.*, 841 S.W.2d at 759.

Based on the facts before the jury, and an assumed gestation period of 280 days, the following calculation sets forth the range of the children's possible birthdates and the resulting age of Victim:

| Possibility No. | Child | Birth Date | Age at Trial 6/11/2009 | Age at Offense 8/15-9/15/08 |
|---|---|---|---|---|
| 1 | Half-Brother (earliest possible) | 6/12/93 | 15 | 15 |
| 2 | Half-Brother (latest possible) | 6/11/94 | 15 | 14 |
| 3 | Sister (earliest possible) | 6/12/94 | 14 | 14 |
| 4 | Sister (latest possible) | 6/11/95 | 14 | 13 |
| 5 | Victim as Second Child (based on oldest possible Half-Brother) | 3/19/94 | 15 | 14 |
| 6 | Victim as Second Child (based on youngest possible Half-Brother) | 3/18/95 | 14 | 13 |
| 7 | Victim as Third Child (based on oldest possible Half-Brother) | 12/24/94 | 14 | 13 |
| 8 | Victim as Third Child (based on youngest possible Half-Brother) | 12/23/95 | 13 | 12 |
| 9 | Victim as Third Child (based on youngest possible Sister) | 3/17/96 | 13 | 12 |

This chart reveals that under most of the possibilities, Victim would indeed have been less than fourteen years of age at the time of the charged conduct. But to reach that conclusion, the jury would have to assume as true either of two scenarios. The first scenario would place Victim as the third child born (as shown by possibilities numbered 7, 8, or 9). However, there was no evidence before the jury that Victim was born third. Based on the evidence presented to the jury, Victim could have been born second and Sister could still have been fourteen at the time of trial (as illustrated by possibilities numbered 5 and 7).

The second scenario would place Victim as Sister's twin with a birthday between

12/24/94 and 6/11/95 (as illustrated by possibilities numbered 4 and 6). If Victim and Sister were twins and were born at the earliest date possible to allow Sister to have been fourteen years old on the date of trial, that would, of course, mean that Victim was also fourteen years old at the time of the charged conduct (as illustrated by possibility number 3). This second scenario also assumes that the twins' birth date fell within a particular window of time.[7] There was, however, no evidence before the jury to support either of these underlying assumptions.

The critical question then becomes whether it would have been reasonable or speculative for the jury to have assumed a birth order and/or a particular window of time for Victim's birth date given his relationship to Half–Brother and the ages of Victim's siblings at trial. In other words, could the jury have reasonably found that Victim was less than fourteen years old at the time he was sexually abused because it would be true under most of the possibilities?

Unlike in *Dixon*, 70 S.W.3d at 545, where there was no possibility that the victim could have been less than fourteen years of age at the time of the charged conduct, such a possibility was not excluded by the evidence presented in this case. That Victim was less than fourteen years old at the time of the charged conduct, as found by the jury, is certainly possible based on the evidence presented. In fact, it might be said that it was even *probable,* in that it would be true under almost all of the possible factual scenarios. But such a conclusion would have to be based on multiple assumptions—not on actual facts. Finding that Victim was less than fourteen years old based purely on the evidence of his siblings ages at trial would seem to be prohibited by the rule that "a verdict cannot rest upon the piling of an inference upon an inference when there are no *facts* supporting the first inference." *State v. McMullin,* 136 S.W.3d 566, 573 (Mo.App. S.D.2004).[8]

In *McMullin,* the defendant was charged with two counts of violating a full order of protection. *Id.* at 569. The portion of the form used by the sheriff to indicate his method and time of service of the order was blank. *Id.* The defendant sent a letter to the victim after the date of the first charged offense indicating that he had not been served with the order and could write the victim until he was served.

7. In addition to presuming that each of the children was born after the presumed gestation period, our calculations also presume that if Victim and Sister were twins, they were born on the same day and that one or the other was not delivered prematurely.

8. Although *McMullin* has not been overruled, and its "rule" prohibiting "inference stacking" has been applied in many Missouri cases, it has also been criticized in others. *Id.* at 572 n. 5. As best we can tell, the Supreme Court of Missouri has not yet taken a position on the matter. *See State v. Feger,* 340 S.W.2d 716, 722 (Mo. banc 1960) ("Appellant's 'inference on an inference' argument, if such a rule actually exists as contended, misinterprets the rule that several inferences may properly be drawn from the same proved facts, if each inference is supported thereby") (citing *State v. Ring,* 346 Mo. 290, 141 S.W.2d 57, 64–65 (Mo.1940)). "While several inferences properly may be drawn from the same proven facts provided each inference is supported thereby (*State v. Feger,* 340 S.W.2d 716, 722(4) (Mo.1960), it is impermissible to draw an inference which is dependent upon another inference drawn from some other fact shown only by inference. *State v. Ring,* 346 Mo. 290, 304, 141 S.W.2d 57, 64–65(16) ( [Mo. banc 1940]; *State v. Gonzales,* 533 S.W.2d 268, 272(4) (Mo.App.1976)." *State v. Brown,* 542 S.W.2d 789, 792 (Mo.App. Spfld.D.1976). We will continue to follow the "rule" prohibiting the stacking of inferences as set forth in *McMullin* until our high court chooses to address the issue directly.

*Id.* This court held that the defendant's letter could not be used to prove his knowledge of the issuance of the first order because "what he said in the April letter was not proof he knew about the order in March." *Id.* at 572. The State argued, however, that other evidence of notice was presented via testimony that the clerk "oftentimes" sent the orders via certified mail, and that it could be presumed that the clerk sent the notice because it was the clerk's legal obligation to do so. *Id.* at 572–73. We rejected those arguments, along with any resulting presumption that the defendant would have received the mailed notice, stating, "[a]n appellate court cannot infer a fact (receipt of the order) when that inference is based upon another inference (presumption the clerk properly mailed the order) that is not based upon a *fact.*" *Id.* at 573 (emphasis in original).

A similar problem with determining Victim's age based solely on the age of his siblings at trial exists in the case at bar. As we stated in *McMullin,*

> it is highly unlikely that [the d]efendant gained knowledge of the order in April, but somehow did not possess that knowledge in March. The State, however, did not adduce any evidence of this. As aptly stated by our supreme court: "An *'inference'* is a conclusion drawn by reason from *facts* established by *proof;* 'a deduction or conclusion from facts or propositions known to be true.' A *supposition* is a *conjecture* based on the *possibility* that a thing could have happened. It is an idea or a notion *founded on the probability that a thing may have occurred, but without proof that it did occur.*" *Draper v. Louisville & N.R. Co.,* 348 Mo. 886, 156 S.W.2d 626, 630 (1941) (citation omitted) (emphasis supplied). A criminal conviction cannot be based upon probabilities and specula-

tion. *State v. Boyd,* 91 S.W.3d 727, 734 (Mo.App.2002).

*Id.*

Fortunately, we do not have to determine whether a reasonable juror could have found beyond a reasonable doubt that Victim was less than fourteen years old at the time of the charged conduct based solely on the ages of his siblings at trial. The question we must answer is whether the totality of the evidence adduced regarding Victim's age at the time of the charged conduct was sufficient for the task; not whether each piece of evidence, viewed in isolation, might be sufficient. To that question, we answer, "Yes." We are persuaded that the combination of: 1) the jury's ability to view first-hand Victim's physical appearance and manner while testifying at trial; 2) the fact that Victim was just entering the seventh grade at the time of the charged conduct; and 3) the probability that Victim was then less than fourteen based on the age of his siblings at trial was sufficient evidence from which a reasonable juror could be firmly convinced that Victim was less than fourteen years old at the time of the charged conduct.

Defendant's point is denied, and his conviction is affirmed.

BARNEY, P.J., and LYNCH, J., Concur.