# United States Court of Appeals

## For the Eighth Circuit

———————————————————

No. 22-1722

———————————————————

Dale D. Bookwalter

*Petitioner - Appellant*

v.

David Vandergriff, Superintendent of the Eastern Reception, Diagnostic and Correctional Center

*Respondent - Appellee*

——————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

——————————

Submitted: June 13, 2023
Filed: July 14, 2023

——————————

Before GRUENDER, ARNOLD, and KELLY, Circuit Judges.

——————————

ARNOLD, Circuit Judge.

A jury in a Missouri state court found Dale Bookwalter guilty of statutory sodomy in the first degree, which a person commits if he "has deviate sexual intercourse with another person who is less than fourteen years old." *See* Mo. Rev. Stat. § 566.062(1) (2008). Bookwalter was sentenced to fifteen years in prison. The Missouri Court of Appeals affirmed the conviction, rejecting the argument that the

State had failed to prove beyond a reasonable doubt that the victim was less than fourteen years old. *See State v. Bookwalter*, 326 S.W.3d 530, 531 (Mo. Ct. App. 2010). When Bookwalter turned to the federal courts for relief, a magistrate judge[1] denied his petition for a writ of habeas corpus on the ground that the Missouri Court of Appeals's decision was not objectively unreasonable, though it did grant Bookwalter a certificate of appealability. He now challenges the magistrate judge's determination. We affirm.

A state prisoner may petition for a writ of habeas corpus "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The writ is designed to "guard against extreme malfunctions in the state criminal justice systems"; it is "not a substitute for ordinary error correction through appeal." *See Harrington v. Richter*, 562 U.S. 86, 102–03 (2011). Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a court cannot grant the writ unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). Bookwalter says that the Missouri Court of Appeals's decision was an unreasonable application of clearly established federal law.

A decision involves an unreasonable application of clearly established federal law if the court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *See Nash v. Russell*, 807 F.3d 892, 897 (8th Cir. 2015). To prevail, Bookwalter

---

[1]The Honorable Shirley Padmore Mensah, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

must show that the state court's decision was not merely wrong or even clearly erroneous but "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See White v. Woodall*, 572 U.S. 415, 419–20 (2014).

Bookwalter asserts that the state court's decision involves an unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979). In that case, the Supreme Court reiterated that "[t]he Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *See id.* at 309 (citing *In re Winship*, 397 U.S. 358 (1970)). The Court held that, on habeas review of a state court's determination that the evidence is sufficient to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson*, 443 U.S. at 319. This standard, the Court explained, "gives full play to the responsibility of the trier of fact . . . to draw reasonable inferences from basic facts to ultimate facts." *See id.* So a petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *See id.* at 324. If the jury's inferences are not "so insupportable as to fall below the threshold of bare rationality," *see Coleman v. Johnson*, 566 U.S. 650, 656 (2012) (per curiam), then Bookwalter's *Jackson* claim must fail.

As the Court in *Coleman* observed, there are two layers of judicial deference in cases like this. First, it is for the jury to determine what conclusions to draw from the evidence, and on direct appeal, a reviewing court will not set aside a jury's verdict unless no rational trier of fact could have agreed with the jury. Second, on habeas review, a federal court will not overturn a state-court decision rejecting an evidence-sufficiency challenge unless that decision was objectively unreasonable. This double layer of deference means as a practical matter that *Jackson* claims "face a high bar in federal habeas proceedings." *See id.* at 651.

Bookwalter nonetheless maintains that he has cleared that bar because, he says, no rational juror could have found on this record beyond a reasonable doubt that the victim was under fourteen, and the Missouri Court of Appeals's conclusion to the contrary was objectively unreasonable. That court remarked that "[t]his case painfully demonstrates that the prosecutor's failure to ask and receive an answer to the simplest of questions—'What was your date of birth'—has created a serious question about whether the State sufficiently proved what should have been the easiest element of its case." *See Bookwalter*, 326 S.W.3d at 531. The prosecutor did state during his opening statement that the victim was "a 13-year-old boy," and during his closing argument, he said that the victim "was less than 13" and described him as a "12-year-old boy." But the Missouri Court of Appeals correctly recognized that the prosecutor's comments were not evidence and that the State was obligated to prove that element of the offense beyond a reasonable doubt regardless of whether the parties explicitly contested the issue at trial. *See id.* at 533.

The record indeed shows that no witness was asked about the victim's age, nor was any documentary evidence admitted that showed how old he was. The Missouri Court of Appeals nonetheless affirmed the conviction because it thought the jury could have concluded the victim was under fourteen from three circumstances: The jury saw and heard the victim testify; it heard testimony from the victim's teacher that the victim was entering the seventh grade when the abuse occurred in August and September 2008; and it heard testimony that the victim had an older half-brother who was fifteen at the time of trial nine to ten months after the abuse, that the half-brother and victim shared the same mother, and that the victim had a fourteen-year-old sister at the time of trial, though it wasn't stated whether the sister was older or younger than the victim.

In a detailed opinion, the Missouri Court of Appeals reasoned that, while the case presented "a close question," a rational juror could conclude beyond a reasonable doubt from this combination of circumstances that the victim was under fourteen. *See*

*Bookwalter*, 326 S.W.3d at 531, 537. The magistrate judge forthrightly admitted that she was "not convinced that it would have reached the same conclusion as did the Missouri Court of Appeals," but she recognized that the state court's conclusions were not based on an unreasonable application of *Jackson* given that the court "offered detailed reasons for its conclusion that a reasonable juror could have found beyond a reasonable doubt that [the victim] was under fourteen." We join the courts that have observed that this is a close case. But we agree with the magistrate judge that the Missouri Court of Appeals's decision was not objectively unreasonable.

First, the victim testified at Bookwalter's trial, and so the jury was "able to gauge [the victim's] age based on his manner while testifying and the amount of sophistication (or lack thereof) he displayed when answering questions put to him." *See Bookwalter*, 326 S.W.3d at 534. Bookwalter contends, though, that "[j]urors are not experts in child development." True, but jurors are not polygraph machines or experts in witness veracity, either, yet courts trust them to observe and listen to witnesses to tell if they are lying, so much so that credibility determinations are virtually unassailable on appeal. *See United States v. Nosley*, 62 F.4th 1120, 1130 (8th Cir. 2023). Bookwalter rejoins that "the record is silent as to the victim's appearance so the court of appeals had no basis to find that the jury could infer victim's age based on this factor." True, but once again, the same could be said for a jury's credibility determinations. The record may not reflect why a jury disbelieves a witness, yet that does not stop us from deferring to the jury's determination.

The question nevertheless arises whether a jury's ability to gauge a witness's age is fairly analogous to its ability to determine a witness's credibility. We think the question is at least debatable and so an affirmative answer is not objectively unreasonable. Courts often note that juries can determine a victim's age by looking at photographs, *see, e.g.*, *United States v. Smith*, 459 F.3d 1276, 1287 (11th Cir. 2006), and we see no reason why a jury might determine age more accurately from a photograph than from observing a witness testify.

We understand that, unlike in a case involving a witness's testimony, a reviewing court can view a photograph in a record to ensure the jury isn't clearly mistaken. But other circuits have recognized that a jury's ability to see and hear a victim testify can help it make determinations relating to the victim's age. In *United States v. Robinson*, 702 F.3d 22, 34–36 (2d Cir. 2012), a defendant convicted of sex trafficking a minor argued that the government had failed to prove that he knew or recklessly disregarded that the victim was under eighteen years old. In rejecting that argument, the Second Circuit pointed out that, among other things, the jury saw the victim testify at trial when she was nineteen years old and so it could have inferred that the defendant knew that the victim was a minor at the time of the offense. Similarly, in *United States v. Brooks*, 610 F.3d 1186, 1196–97 (9th Cir. 2010), defendants convicted of child sex trafficking maintained that the evidence was insufficient to show that they knew the victims were under eighteen years old, but the court held that, among other things, the jury had an opportunity to view both victims testify when one was eighteen and the other seventeen. If a jury can infer from a victim's appearance and demeanor that a defendant knew she was underage, it doesn't seem too great a leap to conclude that a jury's ability to see and hear a victim testify might help it determine his age at some relevant time. That other circuits have buttressed their evidentiary-sufficiency determinations with the fact that the jury watched and heard the victim testify suggests that the Missouri Court of Appeals's reliance on this feature of Bookwalter's trial to support its sufficiency determination is at least objectively reasonable. *See Colvin v. Taylor*, 324 F.3d 583, 588 (8th Cir. 2003).

We also find it relevant that the victim's teacher testified that the victim was entering seventh grade at the time the abuse occurred. That fact narrows the range of the victim's age, and though the record does not contain evidence of the typical age of a student entering seventh grade, it doesn't seem unreasonable to presume, assuming that most students graduate from high school before their nineteenth birthday, that, counting backward, the age of the typical seventh grader is twelve or

thirteen. It is true that not all seventh graders are twelve or thirteen, as it's possible that students (especially ones with special education teachers like the victim here) could have repeated grades or started school later than usual. But we think the teacher's testimony could help a rational juror conclude that the victim was almost certainly under fourteen.

Finally, the victim's mother testified that she had a fifteen-year-old son and a fourteen-year-old daughter at the time of trial, nine to ten months after the abuse occurred. Other testimony at trial revealed that the victim's brother was older than the victim. The jury could have concluded that it was highly unlikely for the mother to have had a third child—the victim—who was also fourteen or fifteen at this time, much less nine to ten months earlier when the abuse occurred, given the typical nine-month gestational period. *See Bookwalter*, 326 S.W.3d at 534–37. We think this is true even though it is possible that the victim's mother had three children in very rapid succession or even that she had given birth to twins. It does not seem objectively unreasonable for jurors to conclude from their own experiences that three births in very rapid succession are quite uncommon and that twins are beyond rare. It bears emphasis that we are not suggesting that Bookwalter's jury engaged in any particular thought process on reaching its verdict. We are necessarily deciding what a rational trier of fact could have done based on the record in Bookwalter's trial.

So we agree with the magistrate judge that the Missouri Court of Appeals's decision was not objectively unreasonable. Though a reasonable juror might harbor some possible doubt that the victim was fourteen or older, we are dubious that every rational juror would be compelled to harbor a reasonable doubt or would necessarily not "reach a subjective state of near certitude" that Bookwalter was guilty. *See Jackson*, 443 U.S. at 315. But a more critical point is that, under AEDPA, we do not think that the state court's decision was objectively unreasonable or "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See White*, 572 U.S. at 420.

This case presents the possibility for fairminded disagreement, which means that Bookwalter is not entitled to habeas relief.

Affirmed.

_____