**STATE of Missouri, Respondent,**

v.

**Michael DIXON, Appellant.**

**No. WD 58749.**

Missouri Court of Appeals, Western District.

Jan. 22, 2002.

As Modified March 5, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 5, 2002.

Application for Transfer Denied April 23, 2002.

Emmett D. Queener, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Lemke, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, P.J.,
BRECKENRIDGE and ELLIS, JJ.

PATRICIA BRECKENRIDGE, Judge.

A jury convicted Michael Dixon of first degree statutory rape, § 566.032, RSMo 2000;[1] first degree statutory sodomy, § 566.062; abuse of a child, § 568.060; incest, § 568.020; and first degree endangering the welfare of a child, § 568.045. The trial court sentenced Mr. Dixon to life imprisonment for first degree statutory rape, life imprisonment for first degree statutory sodomy, seven years imprisonment for abuse of a child, five years imprisonment for incest, and five years imprisonment for first degree endangering the welfare of a child, and ordered that the sentences were to be served consecutively. On appeal, Mr. Dixon challenges the sufficiency of the evidence to support his convictions for first degree statutory rape and first degree statutory sodomy, arguing that the State did not prove that the victim ("B.D.") was under the age of fourteen at the time the crimes occurred. Mr. Dixon also claims that the trial court committed plain error in not excluding, *sua sponte*, testimony by the sheriff that he determined that B.D. had been sexually abused. Mr. Dixon further claims that the trial court committed plain error by not ordering the jury to disregard a portion of the State's closing argument in which the prosecutor asked the jury to send Mr. Dixon to jail for the rest of his life "so he's not out raping any other little girls." This court finds that Mr. Dixon's convictions of first degree statutory rape and first de-

---

1. All statutory references are to RSMo 2000, unless otherwise noted.

gree statutory sodomy are not supported by sufficient evidence. The court further finds that the trial court did not plainly err when it did not, *sua sponte*, exclude Sheriff Hughes' testimony or order the jury to disregard a portion of the State's closing argument. The judgment of the trial court pertaining to the convictions for first degree statutory rape and first degree statutory sodomy is reversed and the cause is remanded for a new trial on charges of second degree statutory rape and second degree statutory sodomy. All other portions of the judgment are affirmed.

## Factual and Procedural Background

■ On appeal from a criminal conviction, this court reviews the facts and any inferences therefrom in the light most favorable to the jury's verdict. *State v. Mann*, 23 S.W.3d 824, 827 (Mo.App.2000). Applying this standard, the evidence is that between July 1, 1998, and June 1, 1999, Mr. Dixon sodomized and had sexual intercourse with his stepdaughter, B.D. Mr. Dixon also physically abused B.D. by hitting her, choking her, and throwing her against a wall. This abuse came to the State's attention when "another agency" contacted Chris Hughes, sheriff of Chariton County, on June 1, 1999, and informed him that he should investigate Mr. Dixon. Sheriff Hughes called B.D. and had her come to his office, where B.D. provided a statement that Mr. Dixon sexually and physically abused her. A nurse practitioner then performed a sexual assault forensic examination (SAFE exam) on B.D. The results of the exam showed that B.D. did not have a hymen. The nurse practitioner opined that this did not conclusively prove sexual abuse, but it was consistent with abuse. After this examination, Sheriff Hughes determined that B.D. was sexually and physically abused. Mr. Dixon was arrested later in the day on June 1, 1999.

The State charged Mr. Dixon with first degree statutory rape, § 566.032; first degree statutory sodomy, § 566.062; abuse of a child, § 568.060; incest, § 568.020; and first degree endangering the welfare of a child, § 568.045. A trial was held on April 13, 2000. At the time of the trial, B.D. testified that she was fifteen years old. B.D. also testified about an incident that occurred on her fifteenth birthday. She testified that a seventeen year-old male acquaintance showed up at her house in Keytesville, where she lived with Mr. Dixon and her mother. After Mr. Dixon's arrest on June 1, 1999, B.D. moved to Tennessee to live with her grandmother. Mr. Dixon testified that, at the time of trial, he was thirty-nine years old.

At trial, Sheriff Hughes testified that he took a statement from B.D. in which she stated that Mr. Dixon sexually and physically abused her. Sheriff Hughes further testified that Mr. Dixon's wife gave a statement alleging that Mr. Dixon sexually and physically abused B.D. After that testimony, the State inquired what Sheriff Hughes determined had happened. Sheriff Hughes responded that, based upon B.D.'s statement and the results of the SAFE exam, he "determined" that statutory rape, sodomy and physical abuse had occurred. The sheriff testified that he then arrested Mr. Dixon.

At the end of the rebuttal portion of its closing argument, the State, in urging the jury to convict Mr. Dixon, commented, "It's okay to convict him because he is guilty. Convict him. Send him to prison for the rest of his life so he's not out raping any other little girls."

The jury returned a verdict of guilty on all counts. The jury recommended sentences of life imprisonment for first degree statutory rape, life imprisonment for first degree statutory sodomy, seven years im-

prisonment for abuse of a child, five years imprisonment for incest, and five years imprisonment for first degree endangering the welfare of a child. The court imposed the sentences recommended by the jury, and ordered that the sentences were to be served consecutively. Mr. Dixon appeals.

## Insufficient Evidence of First Degree Statutory Rape and First Degree Statutory Sodomy

Mr. Dixon claims in his first point that the trial court erred in overruling his motion for a judgment of acquittal on the count of first degree statutory rape because the evidence was insufficient to prove all elements of that offense. He asserts an identical claim in his second point, which relates to the count of first degree statutory sodomy. Specifically, he claims that there was insufficient evidence for a reasonable juror to find beyond a reasonable doubt that the victim, B.D., was under fourteen years of age at the time the offense was allegedly committed, an element of both first degree statutory rape and first degree statutory sodomy. Because the issues raised in Mr. Dixon's first and second points are identical, they will be addressed together.

Mr. Dixon raises these claims of insufficiency of the evidence for the first time on appeal. His oral motion for judgment of acquittal at the close of the State's evidence was based on a general claim that "[t]here is reasonable doubt." No motion for judgment of acquittal was made at the close of all the evidence, and the insufficiency of the evidence was not raised in Mr. Dixon's motion for new trial. Nevertheless, "if the evidence is not sufficient to sustain the conviction, plain error affecting a substantial right is involved from which manifest injustice must have resulted." *State v. McClunie*, 438 S.W.2d 267, 268 (Mo.1969). Therefore, we will review the sufficiency of the evidence to determine if manifest injustice occurred.

When considering a challenge to the sufficiency of the evidence to support a criminal conviction, this court's review is limited to determining whether sufficient evidence was presented from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). The evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the jury's verdict. *Id.* All contrary inferences are disregarded. *Id.* Reasonable inferences may be drawn from both direct and circumstantial evidence. *See id.* at 412–13. However, the inferences must be logical, reasonable and drawn from established fact. *State v. Friend*, 936 S.W.2d 824, 828 (Mo.App. 1996).

In considering the sufficiency of the evidence, there must be sufficient evidence of each element of the offense. The elements of an offense are derived from the statute establishing the offense or, when relevant, common law definitions. *See State v. McTush*, 827 S.W.2d 184, 188 (Mo. banc 1992). The elements of first degree statutory rape and first degree statutory sodomy are derived from the statutes establishing those offenses, §§ 556.032 and 556.062, respectively. Section 566.032 provides that "[a] person commits the crime of statutory rape in the first degree if he has sexual intercourse with another person who is less than fourteen years old." Under § 566.062, "[a] person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old." As statutorily defined, both first degree statutory rape and first degree statutory sodomy contain the element that the victim must be "under fourteen years old" at the

time of the alleged criminal conduct. Consistent with these statutory definitions, the charges of first degree statutory rape and sodomy against Mr. Dixon alleged that B.D. was "then less than fourteen years old." When the case was submitted to the jury, the jury was instructed on each first degree offense that, to return a guilty verdict, it must find beyond a reasonable doubt, that "on or between July 1, 1998 and May 14, 1999," B.D. was less than fourteen years old.

■ The focus of our review of whether there was sufficient evidence to support the jury's finding is upon the evidence at trial concerning B.D.'s age. There was no evidence as to B.D.'s date of birth. Instead, B.D. testified that on the date of the trial, April 13, 2000, she was fifteen years old. She further testified to an event that occurred on her fifteenth birthday, and at this time she lived with her mother and Mr. Dixon. This evidence indicates that she turned fifteen prior to June 1, 1999, the time of Mr. Dixon's arrest because, after Mr. Dixon's arrest, B.D. moved to Tennessee to live with her maternal grandmother. From this information, the reasonable inference is that B.D.'s fifteenth birthday occurred sometime between April 13 and June 1, 1999. Therefore, she must have turned fourteen between April 13 and June 1, 1998. Based on this evidence, a reasonable juror could find that B.D. was "less than fourteen years of age" only *before April 13, 1998*. The jury, therefore, could not have found that she was less than fourteen "on or between July 1, 1998 and May 14, 1999," the period specified in the instruction as that during which the offenses were committed.

■ "The state has the burden and must prove each and every element of a criminal case." *State v. Smith*, 33 S.W.3d 648, 652 (Mo.App.2000). Where the State "fail[s] to produce sufficient evidence to

sustain the convictions, the judgment of the trial court is reversed." *State v. West*, 21 S.W.3d 59, 61 (Mo.App.2000). *See also State v. O'Brien*, 857 S.W.2d 212, 215 (Mo. banc 1993) (quoting *Jackson v. Virginia*, 443 U.S. 307, 314–15, 99 S.Ct. 2781, 2786–87, 61 L.Ed.2d 560 (1979)) ("No person may be deprived of liberty, 'except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt' ").

Because the evidence was insufficient to prove beyond a reasonable doubt that B.D. was less than fourteen years old at the time the offenses were committed, an element of each crime was not established. Because the State failed to prove beyond a reasonable doubt that B.D. was less than fourteen years old at the time of the commission of the offenses, Mr. Dixon's convictions for first degree statutory rape and first degree statutory sodomy must be reversed.

■ While the State concedes that there was insufficient evidence to convict of first degree statutory rape and first degree statutory sodomy, it argues that discharge upon reversal is not the proper remedy. Instead, the State argues that Mr. Dixon should be remanded for a new trial because there is evidence, which the jury believed, that is sufficient to convict Mr. Dixon of second degree statutory rape and second degree statutory sodomy. The general rule is that where "the reversal is based upon insufficiency of evidence, the case is not remanded for a new trial, [but is] remanded to the [trial court] with instructions to discharge the defendant." *West*, 21 S.W.3d at 67. The State is correct, however, that the defendant is not required to be discharged in every case overturned for insufficiency of evidence. Where a conviction on the greater offense is reversed for insufficient evidence, the

reviewing court may enter a conviction for the lesser offense if all elements necessary for conviction have been found by the jury. The Missouri Supreme Court recognized this remedy in *O'Brien*, 857 S.W.2d at 220:

> Where a conviction of a greater offense has been overturned for insufficiency of the evidence, the reviewing court may enter a conviction for a lesser offense if the evidence was sufficient for the jury to find each of the elements and the jury was required to find those elements to enter the ill-fated conviction on the greater offense.

This principle was applied in *State v. Cobbins*, 21 S.W.3d 876, 877 (Mo.App. 2000), where the defendant was found guilty by the jury of felonious restraint. The offense of felonious restraint required "that a defendant unlawfully restrain the victim and expose the victim to a substantial risk of serious physical injury." *Id.* at 878. On appeal, the Eastern District of this court reversed the conviction for felonious restraint because there was no evidence presented at trial that the defendant exposed the victim to a substantial risk of serious physical injury. *Id.* at 879. Nevertheless, since the jury necessarily found all the elements of the lesser offense of false imprisonment in convicting the defendant of felonious restraint, the proper remedy was not discharge but remand for entry of a judgment of conviction and sentencing for false imprisonment. *Id.* at 880.

Another example of a case where there was insufficient evidence to convict on the greater offense, but the jury found all elements of the lesser offense is *State v. Granger*, 966 S.W.2d 27 (Mo.App.1998). In *Granger*, the court reversed a conviction for burglary in the first degree because there was insufficient evidence that the defendant entered the victim's apartment for the purpose of committing an assault. *Id.* at 29. The court found that

trespass in the first degree was a lesser included offense of burglary in the first degree, and that "all elements of the class B misdemeanor of trespass in the first degree were necessarily found by the jury in arriving at its verdict for the burglary count." *Id.* Therefore, the court remanded the case for the entry of a judgment of conviction and sentencing for trespassing in the first degree. *Id.* at 29–30.

Although *O'Brien* is the case that established the rule that a defendant can be convicted and sentenced for a lesser offense if the jury necessarily found all the elements of the lesser offense when erroneously convicting on the greater offense, that rule did not govern the disposition of *O'Brien*. 857 S.W.2d at 220. In *O'Brien*, there was insufficient evidence to convict of the greater offense, but the jury did not have to find all the elements of the lesser offense when erroneously convicting on the greater offense. *Id.* There, the Supreme Court reversed O'Brien's conviction for first degree murder due to insufficient evidence of the element of deliberation. *Id.* Because the jury, albeit improperly, found O'Brien guilty of first degree murder, it was not required to find an element of the lesser offense, felony murder, that the victim died in the course of the burglary for which O'Brien was convicted. *Id.* The Court declined to infer this fact in order to enter a conviction on felony murder. *Id.* Instead, the *O'Brien* court remanded the case for a new trial on the lesser charge of felony murder because there was sufficient "evidence from which the jury could have concluded that [the victim] died in the course of the burglary." *Id.*

Similarly, in *State v. Vaughn*, 940 S.W.2d 60 (Mo.App.1997), the defendant's conviction for first degree assault was reversed due to insufficient evidence to show that the victim suffered serious physical injury, because there was no evidence that

the victim sustained any injury when she was "poked" with a kitchen knife. *Id.* at 62. Following the rule set forth in *O'Brien,* the court declined to enter a conviction on the lesser included offense of second degree assault, because the evidence failed to show that the defendant caused physical injury to the victim. *Id.* This court did find that there was sufficient evidence to convict the defendant on the lesser offense of third degree assault. *Id.* at 63. But it declined to enter a conviction for third degree assault because the jury was not required to find an element of that crime, either that the defendant put the victim in apprehension or immediate physical injury or, alternatively, that he knew that she would regard the contact with the kitchen knife as offensive or provocative. *Id.* The court found that the proper remedy was to remand the case for a new trial on the charge of third degree assault. *Id.*

The State argues that the rule of *O'Brien* warrants remand of Mr. Dixon for a new trial on the lesser offenses of second degree statutory rape and second degree statutory sodomy when his convictions were reversed on the greater offenses of first degree statutory rape and first degree statutory sodomy. In determining whether an offense was a "lesser" offense, the Supreme Court in *O'Brien* applied § 556.046 to determine that second degree murder is a lesser offense of first degree murder. 857 S.W.2d at 220 n. 2. Section 556.046 outlines the grounds for an offense to be a lesser offense included in a greater offense:

1. A defendant may be convicted of an offense included in an offense charged in the indictment or information. An offense is so included when

    (1) It is established by proof of the same or less than all the facts re-

quired to establish the commission of the offense charged; or

    (2) It is specifically denominated by statute as a lesser degree of the offense charged; or

    (3) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein.

2. The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

Subparagraph (1) of subsection 1 outlines the general definition of a lesser included offense. Statutory rape in the second degree and statutory sodomy in the second degree include age elements that are distinct from those required for first degree statutory rape and first degree statutory sodomy, namely, that at the time the offenses were committed (1) Mr. Dixon was "twenty-one years of age or older" and (2) B.D. was "less than seventeen years of age." Sections 566.034, 566.064. Therefore, they do not qualify as lesser included offenses under subparagraph (1).

Nevertheless, the Supreme Court has held that "Section 556.046.1(2) is a legislative determination that an offense can be a lesser offense of another offense so that a charge of the greater will support a conviction of the lesser although the lesser is not necessarily included in the greater...." *State v. Wilkerson,* 616 S.W.2d 829, 833 (Mo. banc 1981). Here, the second degree offenses are specifically designated by statute as a lesser degree of the first degree statutory rape and sodomy and, this designation, like the designation of the felony murder offense in *O'Brien,* makes the second degree offenses lesser offenses. *See State v. Hibler,* 5 S.W.3d 147, 150 (Mo.banc 1999).

At trial, there was evidence regarding the ages of Mr. Dixon and B.D. that would support convictions for these lesser offenses of second degree statutory rape and second degree statutory sodomy. As discussed above, the evidence at trial supported a finding that B.D. turned fourteen sometime between April 13 and June 1, 1998. On this basis, the logical inference is that during the time of the alleged misconduct, "on or between July 1, 1998 and May 14, 1999," B.D. was under seventeen years old. In addition, at trial, Mr. Dixon testified that he was thirty-nine years old, which is older than age twenty-one.

Because the evidence at trial was sufficient to support convictions on second degree statutory rape and second degree statutory sodomy and, under § 556.046.1(2), these offenses are specifically denominated as lesser degree offenses of first degree statutory rape and first degree statutory sodomy, Mr. Dixon should not be discharged. Since the jury was not instructed on the additional and distinct age elements for second degree statutory rape and sodomy, however, this court will not enter a conviction for the lesser offenses of second degree statutory rape and second degree statutory sodomy and, instead, remands for a new trial on the second degree offenses.

### Opinion Testimony Not Plain Error

■ Mr. Dixon's remaining assertions of trial error will be considered, despite the reversal of his convictions for first degree statutory rape and sodomy, because these claims of error also relate to his convictions for abuse of a child, incest and first degree endangering the welfare of a child. In his third point on appeal, Mr. Dixon avers that the trial court erred in failing to exclude, *sua sponte,* a portion of Sheriff Hughes' testimony. Mr. Dixon claims that the testimony by the sheriff

that he had "determined" that B.D. had been sexually abused and that he "believed" that sodomy and incest had taken place improperly stated a conclusion as to an ultimate issue, i.e., the veracity of B.D.'s allegations against Mr. Dixon, thereby invading the province of the jury. During the State's direct examination, Sheriff Hughes testified concerning a statement that he had taken from B.D. After Sheriff Hughes testified that B.D. signed a written account of her statement, the prosecutor asked him:

Q. At that point, Sheriff, what did you determine then happened?

A. I determined that [B.D.] ... had been sexually abused from her statement, and I also had a SAFE exam that was set up and that also showed that there had been—that she was had [sic] findings of sexual abuse did occur [sic] along with for [sic] the statutory rape instance, and I believe that sodomy did take place and incest and there was physical abuse for the assault to take place.

Q. At some point, Sheriff, did you arrest Michael Dixon?

A. Yes, ma'am....

■ Mr. Dixon did not object to this testimony. Accordingly, this court's review is limited to plain error. *State v. Barnum,* 14 S.W.3d 587, 593 (Mo. banc 2000). Under the plain error standard, Mr. Dixon is entitled to relief only if he demonstrates that trial court's action caused him to suffer manifest injustice or a miscarriage of justice. *State v. Smith,* 944 S.W.2d 901, 915 (Mo. banc 1997).

■ It is true that "a lay witness must be restricted to statements of fact." *State v. Mitchell,* 847 S.W.2d 185, 186 (Mo.App. 1993). "It is also not proper for a lay witness to state a conclusion concerning

the ultimate issue for the jury, or to give an opinion as to another person's real or actual state of mind." *State v. Kluck*, 968 S.W.2d 206, 208 (Mo.App.1998).

Nevertheless, even if Sheriff Hughes' challenged testimony improperly stated an opinion as to the veracity of B.D.'s allegations against Mr. Dixon, Mr. Dixon is not entitled to relief. In *State v. Burgett*, 848 S.W.2d 613, 615 (Mo.App.1993), the Eastern District of this court held that plain error relief was not warranted when similar testimony was admitted without objection. In *Burgett*, a deputy testified that the defendant's spouse had told him "that she believed her husband had done [the crime]." The State mentioned this part of the deputy's testimony in both its opening statement and closing argument, without any objection. *Id.* at 615 n. 2. On appeal, the court found that "a proper objection [to the testimony and the argument] should have been sustained." *Id.* at 616. Because defense counsel had not objected to the testimony and argument, however, the court's review was for plain error. *Id.* at 615. Under plain error review, the court determined that no manifest injustice or miscarriage of justice had occurred because "the State's case against defendant was strong." *Id.* at 616.

Like *Burgett*, the facts in this case do not give rise to a finding of manifest injustice or miscarriage of justice. The State did not refer to Sheriff Hughes' testimony again in either its subsequent questioning or in closing argument. In addition, independent evidence of Mr. Dixon's guilt as to the offenses charged was strong. At trial, B.D.'s testimony was consistent with the statement she gave Sheriff Hughes. Also, B.D.'s mother consistently testified that she suspected that B.D. was having sex with Mr. Dixon based upon her observations of Mr. Dixon's inappropriate comments to B.D. and his inappropriately

touching B.D. While B.D.'s mother was inconsistent in her testimony at trial as to whether she had observed Mr. Dixon having sex with her daughter, she had no motive to lie when she made a statement a year earlier that she observed Mr. Dixon having sex with her daughter and she did nothing. In contrast, the evidence showed that B.D.'s mother had a significant motive to be inconsistent in her testimony at her husband's trial regarding whether Mr. Dixon had sex with B.D., because she did not want her husband to be convicted but she did not want to charged with perjury. After reviewing all the evidence, including these facts, even if Sheriff Hughes' testimony was improper, this court is not convinced that Mr. Dixon suffered manifest injustice from the trial court's failure to exclude it, *sua sponte*. The point is denied.

### Improper Closing Argument Not Plain Error

■ In his final point on appeal, Mr. Dixon contends the trial court committed reversible error by failing, *sua sponte*, to order the jury to disregard that portion of the State's closing argument in which the prosecutor requested that the jurors send Mr. Dixon to prison for the rest of his life "so he's not out raping any other little girls." Mr. Dixon claims that the State's argument improperly sought Mr. Dixon's conviction based on the danger he potentially posed in the future. He further claims that the argument had a decisive effect on the jury, which returned convictions and recommended the maximum sentences on each offense.

At trial, Mr. Dixon failed to object to the prosecutor's remarks in closing argument. Accordingly, Mr. Dixon requests plain error review. As noted previously, plain error occurs only when there is manifest injustice or a miscarriage of justice. *State*

*v. Boyd,* 954 S.W.2d 602, 606 (Mo.App. 1997). "Relief should rarely be granted on assertions of plain error as to closing argument because, 'in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention.' " *Id.* (quoting *State v. Silvey,* 894 S.W.2d 662, 670 (Mo. banc 1995)). In fact, "plain error relief should be rarely granted as to closing argument, 'for trial strategy looms as an important consideration and such assertions are generally denied without explanation.' " *Id.* (quoting *State v. Cobb,* 875 S.W.2d 533, 537 (Mo. banc 1994)).

Here, Mr. Dixon challenges the State's remark in closing argument asking the jury to "[c]onvict [Mr. Dixon]. Send him to prison for the rest of his life so he's not out raping any other little girls." In this comment, the State is suggesting to the jury that Mr. Dixon is a threat to commit future crimes. "It is not proper for a prosecutor to speculate as to future possible acts or conduct of the defendant." *State v. Reynolds,* 997 S.W.2d 528, 532 (Mo.App.1999). In particular, it is error for a prosecutor to speculate about a defendant's "propensity to commit future *criminal* acts." *Id.* at 532–33. Nonetheless, under plain error review, improper speculation does not constitute reversible error unless there is a showing of a decisive effect of the improper argument on the jury's decision, which is the "reasonable probability that, in the absence of [the improper] arguments, the verdict would have been different." *State v. Baller,* 949 S.W.2d 269, 272 (Mo.App.1997).

In considering whether the State's improper comment in its closing argument, "Send [Mr. Dixon] to prison for the rest of his life so he's not out raping any other

little girls," had a decisive effect on the jury's decision, the holding of *State v. Brass,* 781 S.W.2d 565 (Mo.App.1989), is instructive. In *Brass,* the prosecutor made a similar statement in closing arguments. *Id.* at 567. There, the prosecutor stated, "I don't want his penis in another child's mouth. I don't want his brother's penis in another child's behind." *Id.* As in Mr. Dixon's case, defense counsel in *Brass* failed to object to the statement, and the court reviewed the comment under plain error. *Id.* While it acknowledged that "the two sentences in question [did] argue with respect to defendant's committing future crimes and the necessity of deterrence of those crimes," the court found that there was no plain error because "the two sentences uttered in the middle of an otherwise proper argument do not constitute a sound, substantial showing of manifest injustice requiring reversal." *Id.* Here, the challenged statement was made at the close of the State's closing argument, and improperly commented on the possibility that Mr. Dixon might commit future sex crimes against other girls. On proper objection, the statement should have been excluded.

Nevertheless, even though the prosecutor's comment was improper, no plain error exists. Although the statement was made at the end of the State's argument, it was isolated and not extensive. The closing argument was otherwise proper. Given the other evidence of Mr. Dixon's guilt, there is little likelihood that the result would be different on retrial. *See State v. Bellew,* 586 S.W.2d 461, 464 (Mo.App. 1979). Reviewing under plain error, this court finds that this statement offered in an otherwise proper closing argument did not constitute "a sound, substantial showing of manifest injustice requiring reversal." *Brass,* 781 S.W.2d at 567.[2] This point is denied.

**2.** In so ruling, we reject Mr. Dixon's claim

that two questions raised by the prosecutor

**551**

The portion of the judgment pertaining to Mr. Dixon's convictions for first degree statutory rape and first degree statutory sodomy is reversed and the cause is remanded for retrial of Mr. Dixon on the lesser offenses of second degree statutory rape and second degree statutory sodomy. In all other respects, the judgment is affirmed.

All concur.

during cross-examination of Mr. Dixon, which allegedly "hinted" that Mr. Dixon committed sexual misconduct with his own children, contributed to the "decisive effect" of the improper comment in State's closing argument. The trial court sustained Mr. Dixon's objections to the challenged questions, and the trial court "was in a better position than this court to evaluate the prejudicial effect, if any, on the jury." *See State v. Vaught,* 34 S.W.3d 293, 295 (Mo.App.2000).