

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111981 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Ralls County |
| vs. | ) | Cause No. 19RL-CR00538 |
| | ) | |
| ROBERT L. SIMS JR., | ) | Honorable Jason H. Lamb |
| | ) | |
| Appellant. | ) | FILED: November 5, 2024 |

### Opinion

Robert L. Sims Jr., (Sims) appeals from the trial court's judgment following a jury trial convicting him on two counts of first-degree statutory sodomy, one count second-degree rape, one count second-degree statutory sodomy, one count first-degree kidnapping, one count sexual exploitation of a minor, and one count forcible sodomy. Sims raises four points on appeal. Points One and Two allege the State did not adduce sufficient evidence that Victim was under the age of fourteen as required for the jury to find him guilty of both first-degree statutory sodomy charges. Point Three alleges that the trial court plainly erred in (1) failing to *sua sponte* intervene when the State asked leading questions of Victim to confirm her age at the time of the alleged conduct and (2) in failing to strike Victim's one-word affirmative response resulting in manifest injustice. Point Four alleges the trial court erred in denying Sims's motion for judgment of acquittal on the charge of first-degree kidnapping as there was insufficient evidence for the

jury to have found the essential elements of the crime beyond a reasonable doubt because no evidence was adduced establishing Victim was at risk for increased harm that was not merely incidental to the forcible sodomy.

We disagree. We find that sufficient evidence was adduced at trial to support the court's judgment in Points One, Two, and Four. As to Point Three, because we find that Victim testified to her age before the State's challenged questions, this record does not reflect an evident, obvious, or clear error by the trial court, and therefore we decline to review this point for plain error. Accordingly, we affirm the trial court's judgment.

Background

Victim,[1] born in October 1991, met Sims when she was three or four-years-old while he dated and then eventually married her mother (Mother). Victim did not have a good relationship with Sims because she was a "daddy's girl" and she resented Sims trying to replace her biological father in her life. Around the time of her freshman year of high school, Victim and her siblings moved into Sims's trailer, nicknamed "The Hill," while Mother retained her primary residence elsewhere. Mother routinely stayed at her other residence while Victim and her siblings stayed with Sims.

Victim recalled getting her period in 2005 at age thirteen and Sims told her she must have lost her virginity because she was bleeding. Sims accused Victim of having sex with his other son and if "[Victim] would do that then it was ok for him to touch [Victim]." Sims began repeatedly coming into her bedroom at night and touching her breasts and vagina over her clothes. After a month of this, Sims progressed to regularly touching the same areas underneath Victim's clothes. Sims would also frequently insert his fingers into Victim's vagina. This

---

[1] Names are redacted pursuant to § 509.520, RSMo. (Cum. Supp. 2023).

2

continued and Sims then required Victim to regularly come to his room at night. While in his bedroom, Sims required Victim to use her hands and then later her mouth on his penis until he ejaculated.

Sims then began raping Victim on a regular basis. The first time, Victim felt pain and asked him to stop, which resulted in Sims telling Victim to "shut up and that it would eventually get better." Sims raped Victim at least fifteen times per month. It was around this time Sims told Mother to get Victim on birth control so she would not get pregnant. Sims regularly required Victim to put on lingerie he bought for her and pose for pictures or remove the lingerie prior to raping her. Sims also recorded the rapes so often that Victim "[c]an't remember a time when he didn't record me." Sims forced Victim to watch some of these videos. On several of these occasions, Sims forced Victim to take pills that caused her to pass out and she would awaken to Sims raping her.

Sims used sex to punish Victim. Once, Sims aggressively and painfully raped Victim with his penis wrapped in rubber bands. On another occasion, Sims drove Victim in his van to a secluded place and used a sex toy to aggressively rape her. Victim tried to crawl away to the other side of the van several times, but Sims pulled her back to continue assaulting her. After the assault ended, Sims told Victim "that's what [she] [got] for saying no and that [she] would think twice about telling him no."

With respect to the events giving rise to the kidnapping and forcible sodomy counts, Victim testified Sims went "on a rampage" while raping her in his bedroom. He pulled out a revolver, loaded one bullet, spun the cylinder, pointed it at his head, and pulled the trigger. Victim begged him to stop and their exchange became loud such that Mother opened the door and entered the room while Sims was sodomizing Victim with the revolver pointed at the back of

3

her head. At that point, Sims forced Mother to strip naked and perform various sexual acts on Victim. During this encounter, Victim and Mother believed they were in mortal danger and Victim believed Sims "wouldn't of let me leave that room alive" if either had tried to leave the bedroom.

In 2010, when Victim was a senior in high school, Sims attacked Victim by punching her, shoving her on to the floor, and throwing a knife at her. Law enforcement removed Victim from the home and she "never went back." At that time, Victim did not disclose to law enforcement Sims's years of abuse because "he's the type of person that you never stop fearing."

Sims's crimes were discovered in 2019. Sims asked his mother to retrieve something for him from "The Hill." While at "The Hill," she found a document, a "no tell contract," dated November 12, 2009, written by Victim and signed by both Sims and Victim. The "contract" stated that Victim acquiesced to Sims's demands that she make him "come five times," "dress[] up" for him, drink "a little," and "tak[e] pills," until she graduated from high school. Victim testified she signed the document so she "could get out alive." Sims's mother gave the document to Victim and Victim took it to law enforcement.

Sims was charged as a prior offender with two counts of first-degree statutory sodomy, two counts of second-degree statutory sodomy, one count first-degree kidnapping, one count sexual exploitation of a minor, and one count forcible sodomy. Following trial in 2023, the jury found Sims guilty of all charges and the court sentenced him to an aggregate of three consecutive life sentences. This appeal follows.

<u>Discussion</u>

**I.     The State Adduced Sufficient Evidence that Victim was Less Than Fourteen at the Time of the First-Degree Statutory Sodomy Counts. (Sims's Points One and Two)**

4

Sims's first and second points raise identical issues so we address these points together. Sims alleges that the State adduced insufficient evidence that Victim was under the age of fourteen at the time Sims committed the two acts of first-degree statutory sodomy such that the jury must have speculated as to Victim's age. We disagree in light of Victim's testimony outlined below.

### A.    Standard of Review

In a review of the sufficiency of evidence, our review is limited to determining whether sufficient evidence was presented at trial from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. *State v. Hardcastle*, 690 S.W.3d 519, 522 (Mo. App. S.D. 2024) (citing *State v. Boyd*, 659 S.W.3d 914, 925 (Mo. banc 2023)); *see also State v. Dixon*, 70 S.W.3d 540, 544 (Mo. App. W.D. 2002) (overruled on other grounds by *State v. Claycomb*, 470 S.W.3d 358 (Mo. banc 2015)). In making that determination, "great deference is given to the trier of fact, and an appellate court will not reweigh the evidence anew." *Hardcastle*, 690 S.W.3d at 522 (quoting *Boyd*, 659 S.W.3d at 925). We do not act as a "super juror" with veto powers, but rather, we accept as true all favorable inferences in the light most favorable to the verdict and disregard all contrary evidence and negative inferences. *State v. Bracy*, 670 S.W.3d 159, 166 (Mo. App. E.D. 2023) (quoting *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011)); *see also State v. Sprofera*, 427 S.W.3d 828, 832 (Mo. App. W.D. 2014) (internal quotation omitted).

### B.    The Trial Record Regarding Victim's Age at the Time of the First-Degree Statutory Sodomy Offenses

Victim testified at trial that she was born in October 1991. She testified she shared a bedroom with her siblings and that she slept on the top bunk. Victim related that Sims began

abusing her by touching her over her clothes while she was in bed.  In the following exchange, Victim established how she knew she was thirteen at the time the abuse began:

> [State] And you mentioned the top bunk and he's coming into your room. Is there anything going on with you and the defendant prior to him having you come into his room?
>
> [Victim] Uh, yes. Um, he would come into the room in the middle of the night, um, and he would start touching me on top of my clothes.
>
> [State] And when he would come into your room in the middle of the night and start touching you on top of your clothes how old are you when that happened?
>
> [Victim] Um, I was probably around thirteen, fourteen, maybe fourteen.
>
> [State] So when [Sims] -- When [Sims] is first starting to touch you is there an event that you remember it kind of correlating with when it first started?
>
> [Victim] Um, yeah. I had got my period when I was thirteen. It was really, really heavy, um, and [Sims] said that it was that heavy because somebody popped my cherry.
>
> [State] So when he's saying this to you you're thirteen?
>
> [Victim] Yes.
>
> [State] And is that something that sticks out in your mind that you started your period at thirteen?
>
> [Victim] Yes.

Victim then testified that after a month of Sims touching Victim over her clothing, he began touching her breasts and vagina underneath her clothing and inserting his fingers into her vagina "and then it just progressed."  After he began inserting his fingers into her vagina, Sims forced Victim to go into his room in the middle of the night.  While in his bedroom, Victim was coerced on multiple occasions to touch Sims's erect penis with her hands as he told her how to arouse him until he ejaculated.  Victim was also forced to place her mouth on Sims's penis until

6

he ejaculated. With respect to the charged acts of statutory sodomy, in her testimony Victim contextualized how she knew she was thirteen when those crimes took place:

[State] And [Victim], you talked about how you associate this happening after you started your period?

[Victim] Correct.

[State] Is it significant for you in any way how you remember how old you were when that happened, when you started your period?

[Victim] Um, I remember because we were visiting family, my mom's side of the family. Her sisters live in like Kansas and so we were up there visiting and my aunt was trying to talk to me about periods and to teach me about what to do and what to use and things like that.

[State] And I apologize if you said this earlier, but were you thirteen when that happened?

[Victim] I was.

[State] And these events we talked about the defendant placing his hand on your genitals and you having to place your hand on his penis, did those stick out in your mind as you being thirteen years old?

[Victim] Yes.

[State] So if you're thirteen years old and you talked about you were talking to your aunt about starting your period and things like that do you remember if it was warm outside or maybe any event that you would of visited your family and talked to your aunt about that?

[Victim] Um, I remember that it was, um, it was warm outside because we had came back home, um, and we were playing hide and seek outside. There was a big group of us and we were all playing hide and seek outside.

[State] And so you said these events stick out in your mind as you being thirteen. Is this something or do you remember it more so that you're twelve years old, you know, or excuse me, that you're closer, that you would have been twelve and you were just thirteen or is this something that you're thirteen but nearing your fourteenth birthday?

[Victim] Um, thirteen nearing my fourteenth birthday.

7

[State] And we've talked about how your birthday is in October. So these events we're talking about, about the defendant putting his hand on your genitals and your hand being on the defendant's genitals, did these events occur between April 1st of 2005 and October 8th of 2005?

[Victim] Yes.

Sims did not object to the State's use of leading questions until much later in Victim's testimony. On cross-examination, Victim testified that she remembered getting her first period around "mid-summer," remembering that it "wasn't that hot so I know that it wasn't July. It was before July." At trial, when presented with a copy of her deposition from October 2021, Sims reminded Victim that during her earlier deposition, they had discussed when the abuse began and at that deposition, Victim stated the abuse began a month after her first period, which was in September. At trial, Victim remained adamant that her trial testimony was accurate but she could not provide an "an exact month" when the abuse began, although she indicated Sims started coming into her room beginning in April 2005. When pressed, Victim testified "it was in 2005 and I know that it was in 2005 and I know that it was warm outside."

C.    Analysis of First-Degree Statutory Sodomy Counts

A person commits the act of first-degree sodomy if he has "deviate sexual intercourse" with another who is "less than fourteen years of age." § 566.062, RSMo. Cum Supp 2006.[2] Deviate sexual intercourse is defined as follows:

> any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the penis, female genitalia, or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim.

§ 566.010.1, RSMo. Cum Supp 2006. Sufficient evidence must be introduced for each element. *See Dixon*, 70 S.W.3d at 545. In proving to the jury Sims committed the requisite conduct in §

---

[2] All Section references are to RSMo. (2000), unless otherwise noted.

566.062, the State was required to present sufficient evidence of that conduct and that Victim was under the age of fourteen when that conduct occurred. *See Sprofera*, 427 S.W.3d at 832.

Sims claims Victim initially testified that the charged conduct happened when she was "around thirteen, fourteen, maybe fourteen." He further alleges that Victim only confirmed being under the age of fourteen when the State asked certain leading questions, such as whether the abuse stands out "in your mind as you being thirteen years old."

Sims relies principally on *Dixon*. *See Dixon*, 70 S.W.3d. at 540. We find *Dixon* to be readily distinguishable. There, the victim did not testify to her date of birth, nor to her exact age at the time the charged conduct occurred. Instead, victim testified to her age at trial, her age at the time she moved with a family member after the defendant's arrest, and that victim's birthday "occurred sometime between April 13 and June 1, 1999." *Id.* at 545. The *Dixon* court found that this was insufficient evidence to prove Dixon guilty of statutory sodomy beyond a reasonable doubt because it required the jury to speculate whether victim was less than fourteen-years-old at the time of the charged conduct. *Id.* at 548.

These facts are readily distinguishable from the facts before this Court. Here, Victim attested at trial to her exact date of birth, as well as to her exact age at the time the crimes occurred. Thus, unlike in *Dixon*, the jury did not have to speculate as to Victim's age.

Instead, we find the State's line of questioning here to more closely resemble the direct examination of the victim in *Sprofera*, 427 S.W.3d 833. In *Sprofera*, the defendant appealed his conviction of one count first-degree statutory rape. *Id* at 832. At trial, the victim attested to her birthdate, but initially testified that the defendant began raping her when she "just turned 13. Or was it 14. I think I was 14. I had just turned 14. I think it was one of those two. It was, it was before eighth grade." *Id.* at 833. At that point, the prosecutor followed up and established that

9

Victim was in eighth grade during the "2002/2003 school year," which victim confirmed "because 2003/2004 school year I was in high school." From this testimony, Victim concluded that because eighth grade started in 2002, and she was born in 1989, that she would have been thirteen in 2002. *See Id.* The *Sprofera* court stated that this deductive line of questioning properly adduced sufficient evidence as to the victim's age at the time of the charged offense such that the jury could reasonably have concluded, beyond a reasonable doubt, that the victim was less than fourteen at the time of the charged offense. *Id.*

In the case at bar, after Victim testified to her birthdate and the year when the abuse started, she linked the start of the abuse with other memorable events in her childhood. For instance, she testified that she was thirteen in the summer of 2005 and got her period when it was "warm" outside, but that it was before she went on a summer trip during which she discussed her period in detail with an aunt. Shortly after getting her first period, she remembers Sims commenting on how "heavy" her period was and that it must have been because someone "popped [her] cherry." It was at this time that Sims also accused her of having sex with his son and "if [Victim] would do that then it was okay for him to touch me" and Sims started touching her breasts and vagina over her clothes. Victim testified that this persisted for about a month and then Sims started touching her breasts and vagina under her clothes and inserting his fingers into her vagina. Victim then testified that Sims "progressed" to taking her into his bedroom at night and coercing her to touch his penis with her hands, and then later, her mouth. Victim then testified that all this conduct occurred between April 1, 2005 and October 1, 2005, which is prior to Victim's fourteenth birthday.

Like the victim in *Sprofera*, Victim attested to several corroborative events that established the timeline for the abuse. *See id.* Victim attested to her birthdate and the year in

10

which the abuse began, as well as her age at the time of the crimes, all of which confirmed she was thirteen. As such, Victim's testimony alone was sufficient to support the age element of the charged offenses and the jury was in the best position to weigh the evidence and resolve any credibility determination by believing all, some, or none of her testimony. *See State v. Dodd*, 637 S.W.3d 659, 668 (Mo. App. W.D. 2021); *see also State v. Weston*, 688 S.W.3d 1, 9 (Mo. App. W.D. 2024). Therefore, there was sufficient evidence of Victim's age at the time of the charged conduct for a reasonable juror to find Sims guilty of both counts first-degree statutory sodomy. *See Dixon*, 70 S.W.3d 540 at 544–45. Accordingly, we affirm the trial court's judgment. Points One and Two are denied.

**II.      Sims Is Not Entitled to Plain Error Review Under Rule 30.20 For Court's Refusal to *Sua Sponte* Intervene During the State's Direct Examination of Victim. (Sims's Point Three)**

Alternative to Points One and Two, Sims alleges the trial court erred in failing to *sua sponte* intervene during the State's leading questions concerning Victim's age at the time of the charged offenses and requests plain error review. We decline to exercise our discretion to grant plain error review.

A.      Standard of Review

Because Sims failed to object to the State's questions until later in Victim's testimony, he requests plain error review. *See State v. Johnson*, 524 S.W.3d 505, 513 (Mo. banc 2017). "Rule 30.20[3] is the exclusive means by which an appellant can seek review of any unpreserved claim of error and said claim . . . is evaluated by this Court's plain error framework without exception." *State v. Minor*, 648 S.W.3d 721, 731 (Mo. banc 2022) (quoting *State v. Brandolese*, 601 S.W.3d

---

[3] All Rule references are to M. R. Crim. P. (2023) unless otherwise noted.

519, 530 (Mo. banc 2020)). This review is discretionary. *Id.* (citing *State v. Loper*, 609 S.W.3d 725, 733 (Mo. banc 2020).

Plain errors are "evident, obvious and clear." *State v. Stevens*, 684 S.W.3d 379, 383 (Mo. App. E.D. 2024) (internal quotation omitted)). "Substantial rights are involved if, facially, there are significant grounds for believing that the error is the type from which manifest injustice or miscarriage of justice could result if left uncorrected." *Johnson*, 524 S.W.3d at 513 (quoting *State v. Hunt*, 451 S.W.3d 251, 260 (Mo. banc 2014)). "If plain error affecting substantial rights is found, the Court determines whether the error actually did result in manifest injustice or a miscarriage of justice." *Id.* "Manifest injustice is determined by the facts and circumstances of the case, and the defendant bears the burden of establishing manifest injustice." *Id.* (quoting *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006)). To be entitled to plain error relief, an appellant must "go beyond a mere showing of demonstrable prejudice to show manifest prejudice affecting his substantial rights" such that a "miscarriage of justice or manifest injustice" will occur if the alleged error is left uncorrected. *Id.* (quoting *Winfield*, 5 S.W.3d at 516). To succeed on direct appeal for a claim of plain error and receive a new trial, an appellant must show "the error was outcome determinative." *Id.* (quoting *Minor*, 648 S.W.3d. at 731). When analyzing allegedly erroneously admitted evidence, an appellant must establish the jury would have reached a different conclusion if not for the admission of this evidence, and in the absence of such error, no manifest injustice exists and the court should decline to find plain error under Rule 30.20. *Id.* (internal citation omitted).

"We are generally hesitant to convict a trial court of failure to intervene *sua sponte*, particularly during witness examination." *State v. Brown*, 619 S.W.3d 586, 590 (Mo. App. E.D. 2021) (internal citation omitted)). "Uninvited interference by the trial judge in trial proceedings

12

is generally discouraged, as it risks injecting the judge into the role of a participant and invites trial error." *Id.* "As such, 'the trial court should only take independent action in the most unusual and exceptional circumstances.'" *Id.* (internal citation omitted).

### B. Analysis of the State's Challenged Questions

We find that that Sims has not preserved this claim as the record shows he did not object to the specific questions that he now wishes to impose a *sua sponte* duty on the trial court to correct. Moreover, because Victim testified to her age *before* the State used leading questions in its direct examination of Victim, the State properly incorporated Victim's age into those questions which, after our review, were nothing more than a reiteration of Victim's prior testimony. *See State v. Miller*, 208 S.W.3d 284, 289 (Mo. App. W.D. 2006) (citing *Boulos v. Kansas City Pub. Serv. Co.*, 223 S.W.2d 446, 451–52 (Mo. 1949)). As this record does not reflect an evident, obvious, or clear error by the trial court we decline to review this point for plain error. Point Three is denied.

### III. The State Adduced Sufficient Evidence for a Reasonable Juror to Find that Victim Was Confined for a "Substantial Period" As Required for a Conviction for First-Degree Kidnapping. (Sims's Point Four)

Sims argues that the State failed to prove Sims confined Victim for a "substantial period" when he forcibly sodomized Victim at gunpoint while she was confined to his bedroom. Specifically, Sims argues Victim's confinement was merely incidental to the forcible sodomy and did not increase the harm or danger to Victim. *State v. Sistrunk*, 414 S.W.3d 592, 600 (Mo. App. E.D. 2013). We disagree.

### A. Standard of Review

In a review of the sufficiency of evidence, our review is limited to determining whether sufficient evidence was presented at trial from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. *Hardcastle*, 690 S.W.3d at 522; *see also Dixon*, 70 S.W.3d at

13

545. In making that determination, "great deference is given to the trier of fact, and an appellate court will not reweigh the evidence anew." *Hardcastle*, 690 S.W.3d at 522 (quoting *Boyd*, 659 S.W.3d at 925). We do not act as a "super juror" with veto powers, but rather, we accept as true all favorable inferences in the light most favorable to the verdict and disregard all contrary evidence and inferences. *Bracy*, 670 S.W.3d at 166 (quoting *Nash*, 339 S.W.3d at 509); *see also Sprofera*, 427 S.W.3d at 832 (internal quotation omitted).

### B. The Trial Record Regarding the First-Degree Kidnapping Count

We now turn to the record on the question of whether Sims's confinement of Victim was for a "substantial period" so as to support the kidnapping conviction. One night while Victim was in high school, Sims went "on a rampage" raping Victim in his bedroom with the door closed. He was intoxicated on alcohol and prescription medication. He pulled out a revolver, loaded one bullet, spun the cylinder, pointed the gun to his head, and pulled the trigger. Sims told Victim he "brought me into this town and he can take me out of it" and "he was gonna make me watch because it was my fault." Victim begged him to stop and their exchange became loud such that Mother opened the door and entered the room while Sims was sodomizing Victim with the revolver pointed at the back of her head. At that point, Sims forced Mother to strip naked and perform various sexual acts on Victim. Sims pointed the loaded revolver at Mother, telling her "she was a wasted breath of air on this earth and that if we were gonna go she was gonna go, too." Sims forced Mother to film as he sexually assaulted Victim. Later in the encounter, Sims began raping Mother with Victim present. Victim testified that she felt in mortal danger and could not leave the room because "[h]e wouldn't of let me leave that room alive." Mother added that "we did what we needed to get out of that room." Victim related that the assault continued for at least one hour and ended only when Victim's younger sibling, awakened by the noise from the bedroom, knocked on the door looking for Mother.

14

C.  Analysis of the "Substantial Period" Element of First-Degree Kidnapping

A person commits the crime of first-degree kidnapping if he "unlawfully removes another person without his or her consent . . . or unlawfully confines another person without his or her consent for a substantial period, for the purpose of . . . (4) Facilitating the commission of any felony or flight thereafter."  § 565.110.4 RSMo. Cum Supp 2007.  Here, the State charged Sims under subsection four of this statute.  While the statute does not define "substantial period," Missouri courts have defined the term as being in connection with whether the confinement increases the risk of harm to the victim.  *State v. Sistrunk*, 414 S.W.3d 592at 600 (internal citation omitted).

Sims claims his conduct was "merely incidental" to the forcible sodomy conduct and did not increase the risk of the harm to Victim beyond the sodomy and as a result was insufficient to support his conviction.  *See Sistrunk*, 414 S.W.3d at 600.  The "merely incidental" test upon which Sims relies is "animated by a concern that 'virtually all conduct within the scope of a kidnapping law is punishable under some other criminal provision,'" with the kidnapping charge "pyramided" upon the underlying offense to enhance the punishment, although the confinement was merely incidental to the underlying offense.  *State v. Conaway*, 557 S.W.3d 372, 382 (Mo. App. W.D. 2018).  In *Sistrunk* and *Jackson*, which Sims cites though they do not favor his position, this Court found that an increased risk of harm or danger can result from removing or confining a victim because of the remoteness or privacy of that location.  *See Sistrunk*, 414 S.W.3d at 600; *State v. Jackson*, 703 S.W.2d 30, 32 (Mo. App. E.D. 1985).

In *Sistrunk,* this Court found that if there is an increased risk of harm not normally present in the commission of a crime, the risk of harm is not merely incidental to that crime such that a kidnapping conviction would stand.  *Sistrunk*, 414 S.W.3d at 600.  There, Sistrunk forced the robbery victim from the more visible and less isolated front of the store to the back where he

15

confined the victim for two minutes with his hands and ankles tied. *Id.* This made his criminal activity less visible to the public, and more difficult to report. *Id.* This Court held that tying victim's hands and moving him to the back of the store do not naturally accompany the crime of robbery and therefore such confinement is more than "merely incidental" to the robbery. *Id.* at 604–605. Hence, the *Sistrunk* court held that victim was restrained for a "substantial period." *Id.* at 600.

Similarly, in *Jackson*, the defendant accosted his victim in a parking lot, then took her to an abandoned building, and confined her in a room where defendant raped and robbed her at knife point. *Jackson*, 703 S.W.2d at 31–32. In upholding the kidnapping conviction, the court found that moving the victim to a secluded spot increased defendant's ability to prolong the sexual assault, made it more violent, and prevented the victim from escaping. *Id*. at 33.

The element of confinement for a "substantial period" may be proven by showing that the privacy of the area of confinement increased the potential for more serious criminal activity, hence, increasing the risk of harm to the victim. *State v. Shelton*, 78 S.W.3d 200, 204 (Mo. App. W.D. 2002). In *Shelton,* the defendant was charged with kidnapping by unlawfully confining victim without her consent for a substantial period of time for the purpose of facilitating the commission of forcible rape and sodomy. *Id*. at 204. Like Sims, the defendant in *Shelton* argued that there was insufficient evidence to support a charge of kidnapping because the confinement of the victim was merely incidental to the harm inherent in the offenses of forcible rape and sodomy. *See id*. The *Shelton* court found sufficient evidence that the confinement of the victim in a hotel room, bound and gagged, was not merely incidental to the forcible rape and sodomy, but rather increased the risk of greater harm to the victim. *Id.* at 205. Moreover, the *Shelton*

court found that the fear the victim experienced due to her isolation and scant hope of rescue were evidence of terror, a harm that the kidnapping statute encompasses. *Id.*

Turning now to Sims's conduct, Sims held Victim at gun point for more than an hour while he confined her in a closed bedroom and shielded her from being visible by others, all of which made it less likely that Sims's crime would be discovered and more difficult for Victim to escape, seek assistance, or report the assault. Analogous to the facts in both *Shelton* and *Jackson*, Sims's confinement of Victim increased his ability to prolong his sexual assault, made it more violent, and allowed him to engage in additional serious criminal activity, such as forcing Victim to watch his rape of Mother, forcing Victim and Mother to perform sex acts with each other, and allowing him to record parts of the event. Victim testified that during the assault she was crying and asking Sims to stop because of the physical pain she was subjected to; undoubtedly her isolation from others, and her belief that her life was in danger were evidence of the terror she experienced.

Because the purpose of confining Victim was to commit the felony of forcible sodomy, and Victim's risk of harm increased beyond what is "merely incidental" to the harm inherent in that offense, we find the State presented sufficient evidence for a reasonable juror to conclude Sims was guilty of first-degree kidnapping. *See Sistrunk*, 414 S.W.3d at 600; *see also Dixon*, 70 S.W.3d at 544. Point Four is denied.

<u>Conclusion</u>

The judgment of the trial court is affirmed.

_____
Rebeca Navarro-McKelvey, J.

Lisa P. Page, P.J., and
Kurt S. Odenwald, J., concur.

17